HOMER, *Assignee*, v. NATIONAL BANK OF COMMERCE
IN ST. LOUIS, *Appellant.*

Division Two, June 22, 1897.

1. **Assignment:** EXISTING EQUITIES. An assignee for benefit of creditors takes the assigned estate subject to all the equities existing with respect thereto at the time of the assignment; his rights are the same as the assignor's, no greater, no less.

2. ———: CREDITORS' UNMATURED CLAIMS: SET-OFF. The creditor of an insolvent estate in the hands of an assignee for the benefit of creditors, has no right in equity, any more than at law, to have his unmatured demand set off against his own matured debt to the esestate. The creditor, a bank, can not set off unmatured notes against assignors' deposits.

3. ———: DEBTORS' UNMATURED CLAIMS: SET-OFF. The authorities reviewed and the conclusion reached that where the demand owing to the assignor is not due, but the demand against him is due and payable, at the time of the assignment, set-off may be made against the assignee's demand; but where the demand owing the assignor is due and payable, and the demand against him by the creditor is not due and has not matured, at the time of the assignment, the set-off can not be allowed the creditor of the estate.

4. **Bank's Lien on Deposits.** A bank has no lien upon money standing to the credit of one of its depositors for an indebtedness to the bank not matured, although the depositor may be insolvent.

5. **Implied Agreement of Banker's Lien on Deposits.** The insolvent firm prior to assignment, under a warning from the bank that accommodations could not longer be extended the firm unless its deposits were increased, promised to keep a fair balance with the bank to justify the credits then being extended to it by the bank. *Held*, that such agreement did not imply that such balance was to be applied to the payment of the firm's debts not due.

*Appeal from St. Louis City Circuit Court.*—HON.
JAMES E. WITHROW, Judge.

AFFIRMED.

*Albert Arnstein* for appellant.

(1) An assignee for the benefit of creditors takes the assigned estate subject to all the equities existing at the time of the assignment; his rights are no greater than were those of the assignor. *Peet v. Spencer*, 90 Mo. 388; *State v. Rowse*, 49 Mo. 593; *Jacobi v. Jacobi*, 101 Mo. 507; *Green v. Conrad*, 114 Mo. 664. (2) Insolvency creates an equitable right of set off where it would not otherwise exist. *Foote v. Clark*, 102 Mo. 394; *Field v. Oliver*, 43 Mo. 200; *Fulkerson v. Davenport*, 70 Mo. 417; *Barnes v. McMullins*, 78 Mo. 260; *Ellis v. Kerr*, 23 S. W. Rep. (Tex.) 1050; *Jones v. Shaw*, 67 Mo. 667; *Leabo v. Renshaw*, 61 Mo. 292. (3) Upon the insolvency of the debtor, an equitable right of set-off arises in favor of the creditor, as to all demands owing by the debtor to the creditor at the time of the assignment, whether said demands have or have not matured, provided the liability has become fixed before the assignment. *Rubey v. Watson*, 22 Mo. App. 428; *Smith v. Spengler*, 83 Mo. 411; *Carr v. Hamilton*, 129 U. S. 252; *Scammon v. Kimball*, 2 Otto, 362; *Trust Co. v. Leck*, 58 N. W. Rep. 826; *Darby v. Friedman Savings Co.*, 3 McArthur, 349; *Nashville Trust Co. v. Bank* (91 Tenn.), 7 Pick. 336; *Georgia Seed Co. v. Talmadge*, 22 S. E. Rep. 1001; *Mathewson v. Bank*, 45 N. H. 104; *Dennon v. Bank*, 5 Cush. 194; *Tuscombia v. Rhodes*, 8 Ala. 206; *Thrall v. Hotel Co.*, 5 Neb. 295. (4) Where a bank extends a line of discount to a customer upon the faith of the general balances which he has and is to carry in said bank, upon the insolvency of the depositor equity will apply the balance so in the hands of the bank, in liquidation of the liability contracted upon the faith thereof, and will permit an equitable set-off based upon the implied agree-

ment that said balance shall be used for the purpose of liquidating, though unmatured, any indebtedness so existing.   Morse on Banking, sec. 329, p. 564.

*Rowell & Ferriss* and *J. H. Zumbalen* for respondent.

(1) A creditor of an insolvent estate in the hands of an assignee for benefit of creditors, has no right in equity, any more than at law, to have his unmatured demand set-off against his own debt to the estate, which was due at the date of the assignment. *Reppy v. Reppy*, 46 Mo. 571; *Huse v. Ames*, 104 Mo. 91; *Kortjohn v. Bank*, 63 Mo. App. 166; *Keep v. Lord*, 2 Duer, 78; *Bradley v. Angel*, 3 N. Y. 475; *Myers v. Davis*, 22 N.Y. 489; *Martin v. Kunzemiller*, 37 N. Y. 396; *Fera v. Wickham*, 135 N. Y. 223; *Spaulding v. Backus*, 122 Mass. 553; *Dougherty v. Bank*, 95 Pa. St. 227; *Chipman v. Bank*, 120 Pa. St. 86; *Bank v. Jones*, 2 Pennypacker, 377; *Bosler v. Bank*, 4 Pa. St. 32; *Appeal of Farmers, Etc. v. Bank*, 48 Pa. St. 57; *Lockwood v. Beckwith*, 6 Mich. 168; *Oatman v. Bank*, 77 Wis. 501; *Kinsey v. Ring*, 83 Wis. 536; *Fuller v. Steiglitz*, 27 Ohio St. 355; *Balch v. Wilson*, 25 Minn. 299; *Jackson v. Bell*, 31 N. J. Eq. 554, 556; *Hayes v. Hayes*, 2 Del. Chan. 191; *Jeffryes v. Bank*, L. R. 2 Eq. Cases, 673; *In Re Commercial Bank Corp.*, L. R. 1 Chan. App. 536; Pomeroy's Code Remedies [3 Ed.], secs. 163, 164; 2 Story's Equity Jur. [13 Ed.], sec. 1441; 1 Evan's Pothier on Obligations, side p. 591.   (2) No agreement will be implied that a bank may set off unmatured demands against a customer's current deposit upon his insolvency, from the fact that the bank discounted the paper on the faith of the depositor's general balances. *Beckwith v. Bank*, 4 Sandf. 604; *Jordan v. Bank*, 76 N.Y. 472; *Bank v. Bank*, 68 Ill. 398; *Dougherty v. Bank*, 93 Pa. St. 227; *State Bank v. Bank*, 11 Mo. App. 292.

BURGESS, J.—This action is prosecuted by plaintiff, as the assignee of Ripley & Bronson, to recover the sum of $5,691.52 which amount the assignors had on deposit to their credit with the defendant bank upon the day when said firm executed a deed of assignment to plaintiff for the benefit of creditors, to wit, July 24, 1893.

The answer admits that at the time of the assignment by Ripley & Bronson they had on deposit with defendant to their credit, $5,691.52; but by way of defense, sets up that at the time of said assignment Ripley & Bronson were grossly insolvent and in an embarrassed condition; that the defendant transacted a general banking business; that the firm of Ripley & Bronson deposited its funds with the defendant, and that upon the faith of the general balances so carried by Ripley & Bronson with defendant, defendant extended to said firm a credit in this, that it discounted notes of and acceptances belonging to said firm, and placed the proceeds thereof to said Ripley & Bronson's credit in said account. That on the twenty-fourth day of July, 1893, the balance to the credit of Ripley & Bronson was a result of discounts so made by defendant for them and of general deposits; that on said day two notes which had heretofore been discounted for Ripley & Bronson by defendant were protested for nonpayment and the amount thereof and protest thereon, to wit: the sum of $735.90 was charged against Ripley & Bronson's account on defendant's books; that the assignment made by Ripley & Bronson to the plaintiff was not executed until after the close of banking hours on said twenty-fourth day of July, 1893, and after default had been made in the payment of the said notes, and that the defendant had a banker's lien upon the amount to the credit of said

Ripley & Bronson, and had a right to set off and did set off, as against said balance, the amount of the said two protested notes; that the assignee was duly notified of such default and acquiesced in the charge so made and consented that the amount thereof constituted a proper credit upon said account, and accepted the return of and retained said protested notes.

For a further defense, the defendant pleaded an equitable set off as follows: "That on the said 24th day of July, 1893, the firm of Ripley & Bronson was indebted to it upon a note of $2,000 to mature August 28, 1893; one of $2,000 to mature September 28, 1893; and one of $800 to mature September 13, 1893; that said last three mentioned notes were made by said Ripley & Bronson, and discounted by this defendant for said Ripley & Bronson, and the proceeds of the discount placed to the credit of said Ripley & Bronson in their said general bank account with this defendant, and said discount was so made by this defendant for said Ripley & Bronson upon the faith of the general balance which said Ripley & Bronson had and were to have with this defendant based upon an agreement made prior thereto to that effect, and that the proceeds of the discount of the above described notes in part constituted the balance to the credit of said Ripley & Bronson on said 24th day of July, 1893; that by reason of the insolvency of said Ripley & Bronson, this defendant had the right to and did set off against the deposit so to the credit of Ripley & Bronson on said 24th day of July, 1893, the sum of $4,800 represented by the said notes last above mentioned, and defendant herewith tenders said notes into court for cancellation.

"This defendant further answering, admits that it now has to the credit of said Ripley & Bronson, the sum of $155.62, which said amount it herewith pays

into court for the benefit of the plaintiff, also $10.85 the costs accrued to date."

The case was tried upon the following agreed statement of facts:

"Now comes the parties to the above entitled cause, by their respective attorneys, and submit to the court the following agreed statement of facts, to wit:

"On the 24th day of July, 1893, Lyman B. Ripley and Edward P. Bronson, composing the firm of Ripley & Bronson, and doing a wholesale iron supply business in the city of St. Louis, Missouri, made a general assignment of their firm property to the plaintiff for the benefit of their creditors under the statutes of Missouri. Such assignment was executed after banking hours on said 24th day of July, between the hours of 5 and 6 o'clock of that day; that plaintiff duly qualified as assignee and has ever since been and is now the duly qualified and acting assignee of said firm; that the defendant is and was during the times herein mentioned, a banking corporation organized under the laws of the United States; that at the time of making such assignment said firm of Ripley & Bronson was insolvent, its liabilities exceeding its assets; that on the said 24th day of July said firm had on deposit to their credit, at the banking house of defendant the sum of $5,691.52, which was payable to said firm as in the ordinary case of bank deposits; that on the 27th day of July, 1893, plaintiff having duly qualified as assignee, made demand on defendant for the said sum of $5,691.52 and defendant refused to pay said sum to plaintiff; that thereupon plaintiff threatened to bring suit against defendant to recover such deposit, but at the request of defendant, deferred bringing such suit and said bank, in consideration that the bringing of such suit should be deferred, executed

and delivered to plaintiff the following agreement in writing, to wit:

" 'ST. LOUIS, July 27, 1893.

" 'Whereas, W. B. Homer, assignee of Ripley & Bronson, has this day demanded of the bank of commerce the amount of the deposit in this bank belonging to Ripley & Bronson at the time the assignment to him was made, less matured obligations owing at such time by Ripley & Bronson to said bank, which demand has been refused and said assignee threatens immediate suit; said bank hereby agrees, in consideration that said assignee defers bringing suit against it until September 10th, 1893, for such deposit, that whenever such suit is brought thereafter, said bank will interpose no defense which could not be interposed if the suit were brought on this day.

" '(Signed): THE NATIONAL BANK OF COMMERCE IN ST. LOUIS.

"By W. H. THOMPSON, President.'

"And the bringing of suit was deferred in consideration of the foregoing agreement until after September 10, 1893. That at the time when such assignment was made and for some considerable period prior thereto, the said firm transacted a general banking business with the defendant and deposited their funds with the defendant and defendant discounted notes of said firm, or notes payable to said firm bearing the indorsement of said firm; that the aforesaid sum to the credit of Ripley & Bronson, on said 24th day of July, was the result of discounts so made by defendant for said Ripley & Bronson of their commerical paper, and of general deposits made; that on said 24th day of July a note of Stockton & Kuehest in the sum of $216.75 and a note of the Decatur Steam Power Company for $519.15 which had theretofore been discounted for said Ripley & Bronson by defendant were protested

for nonpayment and the amount of said two notes and protest thereon, to wit, the sum of $735.90, was charged against the account of said Ripley & Bronson on the books of said bank; that on the said 24th day of July, 1893, the firm of Ripley & Bronson was indebted to the defendant upon a note of said firm of $2,000 dated and discounted April 20, 1893, due August 28, 1893; and one for $2,000 dated and discounted May 19, 1893, due September 28, 1893, one for $800 dated and discounted May 31, 1893, due September 13, 1893; that the three last mentioned notes were made by said Ripley & Bronson, payable to defendant's order at defendant's banking house, and discounted by the defendant on their respective dates for said Ripley & Bronson, and the proceeds of the discount placed to the credit of said Ripley & Bronson in their general bank account with defendant.

"It is agreed that the sum of $737.90, as above set out was and is a proper charge against the balance in defendant's possession July 24, 1893; that the sum of $155.62 has been tendered and paid in court by defendant for plaintiff's account, and that the costs which accrued in this suit up to the time of making said tender have been paid by defendant; that there remains in this controversy the sum of $4,800, and that the three notes last above mentioned have been tendered into court for cancellation.

"It is further agreed that none of the proceeds of the three last mentioned notes remained in the balance of deposit with defendant to the credit of Ripley & Bronson on July 24, 1893. Either party may offer additional testimony material to the issues herein."

On behalf of defendant *J. C. Van Blarcom*, cashier of defendant testified as follows:

"*Q.* You are the cashier of the Bank of Commerce? *A.* Yes, sir.

"*Q.* The defendant in this case? *A.* Yes, sir.

"*Q.* Are you acquainted with Ripley & Bronson? *A.* Yes.

"*Q.* With which member of the firm did you have your banking transactions? *A.* With Mr. Ripley.

"*Q.* I will ask you to state to the court whether at any time during your business connection with that firm anything was said by you to Mr. Ripley, or Mr. Ripley to you, with reference to the balances which were being carried by them in your bank? *A.* Yes, sir, there were several times, once in particular we sent for Mr. Ripley and told him that unless the account he kept with us was more satisfactory we would have to discontinue discounting paper and loaning them money. We had a long conversation with him and they promised to keep a fair balance with us to justify the credits we were extending to them.

"*Q.* Do you remember about when this last conversation was? *A.* About a year before their failure; the last one was.

"*Q.* I will ask you to state whether there is any well known custom in the city of St. Louis in reference to extending a line of discount to mercantile houses, based on the general balance which they carry with their particular bank? *A.* As a rule banks extend credit based on the accounts that are kept with them."

This was all the evidence. The case was submitted to the court, and judgment rendered in favor of plaintiff for $5,456.89. The case is here on defendant's' appeal. The only controversy in this case is as to the right of defendant to set off against the deposit the unmatured notes owing to it by Ripley & Bronson on the twenty-fourth of July, 1893.

1. It is well settled that an assignee for the benefit of creditors takes the assigned estate subject to

all the equities existing with respect to the assigned estate at the time of the assignment; his rights are the same as the assignor's, no greater, no less.    Burrill on Assignments [4. Ed.], sec. 391; *Phillips v. Rowse*, 49 Mo. 593; *Peet v. Spencer*, 90 Mo. 388; *Huse v. Ames*, 104 Mo. 91; *Green v. Conrad*, 114 Mo. 651.

2.    This propositon being true defendant contends that an equitable right of set-off arises in favor of the creditor, as to all demands owing by the debtor to the creditor at the time of the assignment, whether said demands have or have not matured, provided the liability has become fixed before the assignment; while upon the other hand plaintiff's contention is, that the creditor of an insolvent estate in the hands of an assignee for the benefit of creditors, has no right in equity, any more than at law, to have his *unmatured* demand set off against his own debt to the estate which was due at the date of the assignment.

It is not claimed by defendant that the right to set off under the circumstances of this case exists by statute, so that as no such thing as set-off exists at common law, if the right exists at all, it must be upon purely equitable grounds arising from the insolvency of the assignors.    It seems to be well settled that where the demand owing to the insolvent is not due, but the demand against him is due and payable, at the time of the assignment, that set-off will be allowed.    But the demands sought to be set off by defendant in this case against the deposit account of Ripley & Bronson were not due at the time of the assignment, while the deposit account of Ripley & Bronson was due, and under such circumstances the law seems to be in this State, at least, that the right to set-off does not exist.    Upon this question, however, the authorities generally are in much conflict.

In *Smith v. Spengler*, 83 Mo. 411, the bank of which the plaintiff was the assignee made an assignment to him for the benefit of its creditors, and he sued the defendants on their note to the bank which became due after the assignment. Defendants pleaded, by way of set-off, a debt due them from the bank before the assignment, and it was held a proper subject of set-off. But the facts in that case were different from the facts in the case in hand, in this: At the time of the assignment in that case the debt set off was due, while in the case in hand the debts pleaded as a set-off did not become due for some time after the assignment, nor until suit would have been brought by the assignees but for the agreement that defendant would not take advantage of the delay. In that case it is said: "It would seem to be sufficient if the right of set-off existed in favor of the defendant and against the plaintiff, [quoting from *Reppy v. Reppy*, 46 Mo. 571] at the time of the commencement of the suit and had then become due." Waterman on Set-Off, sec. 381.

But in order that a debt against an insolvent may be set off against his assignee, it must be due at the time the assignment is made, or at any rate by the time suit is brought by the assignee.

In the case of *Huse v. Ames*, 104 Mo. 91, the defendant sought to set off against a demand due at the time of the assignment, a claim against the assignor for money paid by the defendant after the assignment as surety for the assignor, in discharge of a liability which had accrued before the assignment, and it was said: "While the insolvent is not bound to pay otherwise than according to his contract, it is considered no hardship that he should accept payment of a demand owing to him before maturity. Hence it has been often ruled in the State of New York, and is now the law of this State, that if the claim against the assignee

was due at the date of the assignment, then there is an equity because of the insolvency of the assignor, and the debt so due may be set off against the claim in favor of the assignee, though the claim held by the assignee was not due at the date of the assignment. *Smith v. Spengler*, 83 Mo. 408; *Smith v. Felton*, 43 N. Y. 419; *Smith v. Fox*, 48 N. Y. 674; *Coffin v. McLean*, 80 N. Y. 560. But the claim against the assignee must be due at the date of the assignment, and if it is not then due, there is no equitable set-off. *Keep v. Lord*, 2 Duer. 78; *Myers v. Davis*, 22 N. Y. 489; *Chipman v. Bank*, 120 Pa. St. 86." "A demand can not be set off because of the insolvency of the plaintiff in equity any more than at law, unless it existed against the plaintiff in favor of the defendant, at the time of the commencement of the suit, and had then become due. *Reppy v. Reppy*, 46 Mo. 572; *Spaulding v. Backus*, 122 Mass. 553; Pomeroy's Eq. Jur., sec. 704; *Lockwood v. Beckwith*, 6 Mich. 168. . . . . . . . To justify a set-off against an assignee for the benefit of creditors there must be a present debt due at the date of the assignment. In this respect a surety stands on no better footing than any other creditor. The defendant had no such debt against the assignor at the date of this assignment. Indeed, he had no such debt when this suit commenced."

It is, however, insisted by counsel for defendant that whatever was said in that case with respect to the question now under consideration was not necessary to a decision of the case, and was merely *obiter*. But we are unable to concede that proposition. In that case Huse, as the assignee of the Lindell Hotel Association, brought suit against Ames for the amount due the association for a board bill. At the time of the assignment Ames was an accommodation indorser for the association on several notes not then due, which exceeded

in amount the board bill.   Ames afterward paid off the notes and when sued for his board bill he pleaded by way of equitable set-off the amount which he had subsequently been compelled to pay for the association, and it was held that the right of equitable set-off did not exist.   As an evidence that what was said by the court was not *obiter*, a careful examination of the authorities cited by the court in its opinion upon that question is all that is necessary.   Thus in *Keep v. Lord*, 2 Duer. 78, it is said that: "Where two persons are indebted to each other on disconnected demands, and one becomes insolvent, the solvent party can not maintain an action for that cause alone, to compel an equitable set-off before the debt owing by the insolvent party becomes due.   If before it becomes due, he assigns the demand against the solvent party, the assignee may recover the assigned demand, free from all claims of set-off on the part of the solvent debtor against the insolvent, where there is no pretense that the assignment of the claim was made with intent to defeat the set-off.   When no other ground exists to support an equitable set-off than the insolvency of one of two parties, severally indebted to each other, the right of set-off does not attach until the debt owing by the insolvent has become due."

*Chipman v. Bank*, 120 Pa. St. 86, was an action by the assignee of an insolvent estate to recover from a bank a balance to the credit and subject to the check of the assignor at the date of the assignment, and it was held that the bank could not set off notes or drafts and indorsed by and discounted for the assignor before but maturing after the assignment.   The same rule was announced in *Spaulding v. Backus*, 122 Mass. 553; and in *Lockwood v. Beckwith*, 6 Mich. 168.

The same criticism of the *Huse* case that is made of it in this, was made in the case of *Kortjohn v. The*

*Continental National Bank of St. Louis*, 63 Mo. App. 166, in which it was not only held that a debt owing by a person who makes a voluntary assignment for the benefit of creditors, but not due at the time of the assignment, can not be set off against a claim held by the assignor, which was due at the time of the assignment and which passed by reason thereof to the assignee, but the court said: "The court distinctly based its rulings on the fact that no debt was *due* Ames at the time the assignment was made." The case of *Rubey v. Watson*, 22 Mo. App. 433, does not, we think, announce a different rule.

3. Another contention is that as the record shows that prior to the discount of the notes of Ripley & Bronson they were informed that their deposit account must be kept up or they could not procure accommodations from the bank; that they were clearly advised, thereby, that the credit was extended to them upon the faith of their general balances, and that the defendant not only relied upon their credit, but also upon the fact that, in the event of insolvency, it would have a fund to look to within its own control, which might be applied upon whatever indebtedness might be owing to it at the time of such insolvency; that this raised an implied agreement between Ripley & Bronson and the defendant that, to the extent of their deposits, the bank, in the event of failure, would have a fund to look to, to indemnify it, and that this gave the bank a *special equity* to look to that fund in the event of insolvency.

As a banker has no lien upon his customer's deposits for advances made the depositor which are not yet due, equity will not permit a set-off of unmatured demands, against such deposits in the absence of an express agreement to that effect. An implied agreement even if one could be drawn from the evidence

adduced in this case will not do. But no such agree-ment can be implied from the testimony of Van Blar-com, defendant's cashier, and that was all the evidence upon that question. It is true that he testified that Ripley & Bronson promised to keep a fair balance with the bank to justify the credits then being ex-tended to them by the bank, but that did not imply that such balance was to be applied to the payment of their debts to the bank not due, or under any and all circumstances before they become due. Ripley & Bron-son could have derived no benefit by the bank's dis-counting their paper, if in so doing they were required by the bank to keep up a balance account to any con-siderable extent which might be applied at any time whenever defendant saw proper, to the liquidation of the discounts whether due or not. Under such cir-cumstances it would have been better for them to have used the balance to their credit. This evidence seems to us to be rather inconsistent with the idea of an im-plied agreement between Ripley & Bronson and the defendant by which the defendant was to have the right in the event of the failure of Ripley & Bronson to apply the amount of their deposits to the payment of their debts to the bank although then not due, than in favor of it.

The universal doctrine is that a bank has no lien upon money standing to the credit of one of its depos-itors for an indebtedness to the bank not matured, although the depositor may be insolvent. *Beckwith v. Bank,* 4 Sandford, 604; s. c., 9 N. Y. 211. The rule is thus announced in *Dougherty v. Central National Bank,* 93 Pa. St. 227. "A bank has no lien on money standing to the credit of one of its depositors, for the amount of a note of such depositor discounted by the bank but which is not matured. The purpose is that the customer may draw out at his pleasure the avails

of his discount. A debtor in one sum has no lien upon money in his hands for the payment of an unmatured debt owing to him, and a bank is debtor for the discount which is placed to its depositor's credit.''

So in *Fourth National Bank v. City National Bank*, 68 Ill. 398, it is said: ''Such a claim would be destructive of the very purpose of a bank accommodation, such as this was. .If a bank can retain the money as against the note, of what use to the borrower is the discount? The universal custom informs us what the contract of all the parties to .such transaction is. . . . . . . . In the very nature of such transaction, a banker's lien can not extend to the money left on deposit with him, according to the customs and usages of banks. It has never been so extended, but is confined to securities and valuables which may ·be in the banker's custody as collaterals.'' The same rule is announced in *State Savings Association v. Boatman's Savings Bank*, 11 Mo. App. 292, and in *Jordan v. National Shoe and Leather Bank*, 74 N. Y. 467.

It follows from what has been said that defendant was not entitled to have its demands against Ripley & Bronson which were unmatured at the time of their assignment to plaintiff set off against their deposit account then due, nor was there any lien in favor of defendant on said account, which entitled it to apply the amount of said accounts to their demands which were not due at the time of the assignment.

Finding no reversible error in the record, the judgment is affirmed. GANTT, P. J., and SHERWOOD. J., concur.