OF THE

# STATE OF MISSOURI

AT THE

## APRIL TERM, 1899.

*( Continued from Volume 149.)*

---

STORTS, Assignee of CITIZENS' STOCK BANK, v. GEORGE, Appellant.

Division Two, May 23, 1899.

150    1
93a ¹206

150    1
100a ¹229

1. **Set-off:** ASSIGNMENT: CAUSE OF ACTION. Defendant was a surety on the bond of a bank in which the county treasurer had deposited certain money, conditioned that said bank would duly pay over said money. The bank failed, and defendant after the assignment but before the commencement of this suit paid his part of the deposit, and pleaded such payment as a set-off to a suit by the assignee on two notes executed by the defendant to the bank long prior to the assignment, due and payable on demand. The treasurer was a general creditor of the bank, and the moneys deposited by him went into the hands of the assignee as general funds of the bank. *Held*, as no right of set-off existed in favor of the treasurer as against the bank at the time of the assignment, since he owed it nothing, defendant had acquired none. *Held*, also, that the defendant and his co-sureties having satisfied the indebtedness of the bank to the treasurer are jointly entitled to be subrogated to it as a whole, and as it could not be portioned out among them, he could not plead his *pro rata* part as a set-off even if the treasurer had a set-off against the bank at time of the assignment. *Held*, also, as there was no assignment by the treasurer to defendant of his demand against the bank, defendant not being subrogated to his rights, could not plead them as a set-off.

2. ——— : ——— : ——— : TRUST FUNDS. Defendant pleaded as a further set-off that he, as one of the several sureties, had, since the assignment, paid a note given by the bank for money borrowed just a month before the assignment; that the bank was then insolvent, and he was induced to execute such note as surety on the false representation of the cashier that the bank was solvent and abundantly able to pay said note, and that by reason of said fraud the money obtained by the bank on said note became a trust fund, and a right of action accrued to him as soon as the money was by it obtained. *Held*, that such money did not become a trust fund, and as defendant as guarantor paid the money for the bank after the bank assigned, he can not set off the amount thus paid against the notes sued on.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

THOS. SHACKELFORD and W. M. WILLIAMS for appellant.

(1)   The answer states, and the demurrer admits, that the items of $299.68 and $218.60, sought to be set off against plaintiff's demands, were at the time of the assignment, due and payable to the treasurer and collector of Saline county, respectively.   This money was on deposit in the bank, and, at the date of the assignment, constituted an existing indebtedness against it, which was then due and could have been sued for and recovered at that time.   Defendant, by reason of his suretyship, was compelled to substitute his money for these deposits.   He is therefore entitled in equity to be subrogated to all the rights, remedies and securities of the creditors.   He takes their place and stands in their shoes as to these deposits.   He is not suing at law upon an implied promise to refund what he has paid.   He is asking to be subrogated to the right of the creditors in these deposits. Rubey v. Watson, 22 Mo. App. 428; Dorsheimer v. Bucher, 7 S. & R. (Pa.) 9; Miller v. Woodward, 8 Mo. 169; Clark v. Bank, 57 Mo. App. 277; Braught v. Griffith, 16 Ia. 26;

Berthold v. Berthold, 46 Mo. 557; Ferguson v. Carson, 86 Mo. 673; Brandt on Suretyship and Guaranty, sec. 260. This case stands upon precisely the same principle as Rubey v. Watson, *supra,* which was approved by this court in Homer v. Bank, 140 Mo. 225. The set-off was allowed in that case upon the doctrine of subrogation and upon a state of facts almost identical with those here. The only difference is that there the deposit was due the principal in the bond, while in this case it belonged to the creditor. The surety is subrogated to the rights of both. (2) If, however, defendant is not entitled to be subrogated to the creditors' rights in the deposits but must stand upon the implied promise to reimburse him for money paid after the assignment as surety for the bank, still these payments were made, and the defendant's claim accrued before this suit was commenced. The claims, in any event, existed in favor of the defendant at the time of the commencement of this action, and had then become due. This entitled him to plead the same as a set-off. Smith v. Spengher, 83 Mo. 408; Reppy v. Reppy, 46 Mo. 571; Homer v. Bank, 140 Mo. 225. (3) The answer alleges that the cashier of the Citizens' Stock Bank falsely represented to defendant that his bank was solvent and responsible, well knowing that said statement was false. It is averred that this was done intentionally and fraudulently in order to induce the defendant to sign a guaranty of a note for $25,000 to the National Bank of Commerce, and that he was thereby induced to do so. The money thus obtained by means of said fraudulent representation, and upon defendant's guaranty, went into the coffers of the Citizens' Stock Bank and helped to swell its assets. It should be held to have been received in trust for the parties who were fraudulently induced to sign said guaranty, and upon whose credit the money was obtained. A right of action accrued to them at once and before the assignment, for this money fraudulently procured. Defendant is entitled to the

set-off growing out of this transaction. Rothschild v. Mack, 115 N. Y. 1; Refinery Co. v. Fancher, 145 N. Y. 552. (4) Defendant's case presents a "most persuasive equity" upon the allegations of his answer. He has been induced by fraud and without any profit or hope of profit to himself, to obtain upon his credit, and place in the vaults of this insolvent bank, within thirty days of the assignment, money that it is now claimed should go to the general fund for the benefit of all creditors. The money having been fraudulently procured, the bank should be held to have received it in trust for those who in reality obtained it, and who became liable for it. We insist that the money so received should be declared a trust fund. Harrison v. Smith, 83 Mo. 210; Stolee v. Corts, 88 Mo. 514; Flint Road Cart Co. v. Stephens, 32 Mo. App. 341; American Sugar Refinery Co. v. Fancher, 145 N. Y. 552.

JOHN A. RICH for respondent.

(1) In a suit by an assignee for the benefit of creditors for a debt due the assignor, the defendant can not set off payments made by him after the assignment as surety for the assignor, though the payments were made on debts which were past due when the assignment was executed. Huse v. Ames, 104 Mo. 91; Green v. Conrad, 114 Mo. 651; Homer v. Bank of Commerce, 140 Mo. 225. To justify a set-off against an assignee for the benefit of creditors, there must be a present debt due at the date of the assignment. In this respect a surety stands on no better footing than any other creditor; the defendant had no such debt against the assignor at the date of this assignment. Homer v. Bank of Commerce, 140 Mo. 236; Kortjohn v. Bank, 63 Mo. App. 166; Iler v. Bank, 69 Mo. App. 64. The defendant had no cause of action of any kind against the bank until after he had paid his proportionate part of the liability created by the execution of the bonds set forth in the answer. He could not sue

Storts v. George.

his co-obligors on the bond for contribution until he had paid the debt. Weidemeyer v. Landon, 66 Mo. App. 520. (2) The position taken by the appellant in this case would very strongly tend to defeat the object of the statute, which says: "That every voluntary assignment made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor in proportion to their respective claims." Section 444, R. S. 1889. And the equity so strongly urged by appellant in his brief would tend to defeat the equity which is created by operation of law in favor of the general body of creditors to have the assets distributed ratably and without preference, and would be giving to this one creditor whose debt was not due at the date of the assignment, the right to offset it by debt presently due from him to the assignor and would be a .preference, and it would be thus anticipating the maturity of the debt against the assignor and thereby change the contract to the prejudice of the other creditors. Kortjohn v Bank, 63 Mo. App. 166. The courts of this State have under the authorities above cited long since adopted the rule that a debt owing by the maker of a voluntary assignment for the benefit of creditors, but not due at the time of the assignment, will not operate as a set-off to a claim acquired by the assignee under the assignment.

BURGESS, J.—This is a suit by plaintiff assignee for the benefit of creditors of the Citizens' Stock Bank, a corporation duly organized under the laws of this State, against the defendant on two notes executed by him to said bank; one for $1,400, dated October 7, 1890, upon which there were several credits, and the other for $125, dated May 3, 1894, both payable on demand to Joseph Field cashier of said bank. The assignment was made on the seventeenth day of December, 1894.

Plaintiff instituted this suit on the twenty-first day of October, 1895. The petition is in the usual form.

The execution of the notes is not denied but defendant pleads what is denominated certain equitable set-offs which are stated by him to have originated in the following manner.

On the fourth of January, 1893, defendant as surety for said bank, joined in a bond to one Winning, treasurer of Saline county, who kept some of the public funds on deposit therein, conditioned that said bank would duly pay over said money. It is alleged that, at the time of the failure, Winning had in the bank $2,396.78, and that this was due and payable at the time of the assignment; that defendant and his co-securities then and there became liable to pay the same, and that on the fourth of March, 1895, before the commencement of this suit, defendant paid his part of the liability due December 15, 1894, to wit: $299.68.

It is further charged in the answer, that defendant, as surety for the bank, also signed a bond to the collector of Saline county, to indemnify him against loss on account of deposits of public funds that he might make therein; that, at the time of the failure, the collector had on deposit in the bank $2,186.42, which then and there became due, and defendant and his co-securities became then and there liable therefor; that defendant, before the commencement of this suit, to wit, on the fifth of March, 1895, paid to said collector $218.60, being his part of the sum due said collector at the time of the assignment.

It is also charged, that when each of said bonds was signed the bank was insolvent, and that this was known to its cashier, who, notwithstanding, fraudulently induced defendant and his co-securities to execute the same.

The answer, as to the third equitable set-off, alleges that, on the fifteenth of November, 1894, said Citizens' Stock Bank was wholly insolvent, and that this fact was well known to its cashier, but that he concealed that fact from defendant; that said bank, on that day, executed its note for

$25,000 to the National Bank of Commerce of Kansas City, due four months after date, bearing eight per cent interest, and that said cashier fraudulently represented said bank to defendant to be solvent and abundantly able to pay said loan, and thereby induced defendant and others to make a guaranty on the back of the note as follows: "We personally guarantee the payment of the within note, and do hereby waive protest on same;" that the cashier procured the money on the faith of said guaranty, and used the same for the purposes of the Citizens' Stock Bank, when in fact the money by reason of the insolvency of said bank and fraudulent representations of said cashier in behalf of said bank, was held by it in trust for the defendant and his co-obligors, and that a trust attached to said fund on the fifteenth of November, 1894, and said fund was due to the defendant and his co-guarantors on the said fifteenth of November, 1894, the day it was received by said Citizens' Stock Bank; that before the institution of this suit defendant paid $2,500 to the National Bank of Commerce of Kansas City, and obtained a release from his liability upon said guaranty.

The amounts paid to the collector and treasurer of Saline county, by defendant, as above set out, and the sum paid by him to the National Bank of Commerce, are asked to be set off against the notes sued on, and there is the further prayer for such other and further relief as defendant may be entitled to receive.

Plaintiff filed a general demurrer to the answer, which was sustained. Defendant declining to plead further, judgment was rendered for plaintiff for $873.93, the amount of the notes sued on, and the defendant appeals.

Defendant insists that the answer stated, and the demurrer admits, that the items of $299.68, and $218.60, sought to be set off against the demands sued on were at the time of the assignment, due and payable to the treasurer and collector of Saline county respectively. That this money

was on deposit in the bank, and, at the date of the assignment constituted an existing indebtedness against it, which was then due and could have been sued for and recovered at that time.

And that as defendant by reason of his suretyship, was compelled to substitute his money for these deposits, he is therefore entitled in equity to be subrogated to all the rights, remedies and securities of the creditors.

No principle is better settled than that when a surety pays the debt of his principal he by reason thereof becomes entitled in equity to be subrogated to all of his rights, remedies, securities, funds, liens, and equities which the creditor may have for the same debt. [Miller v. Woodward, 8 Mo. 169; Berthold v. Berthold, 46 Mo. 557; Rubey v. Watson, 22 Mo. App. 428; Clark v. Bank, 57 Mo. App. 277; Dorsheimer v. Bucher, 7 S. & R. 9; Braught v. Griffith, 16 Ia. 26.] But the question in this case is as to whether defendant is in position under the facts disclosed by the record to invoke in his aid that rule. In passing upon this question we must first determine what rights or equities the treasurer and collector had in the moneys to their credit in the bank at the time of its assignment, for it is just such rights, and no more, that defendant can be subrogated to. It is not claimed in the argument that these funds were trust funds, so that it seems clear that the treasurer and collector were general creditors of the bank, and that these deposits, as all others of like character, went into, and formed part of its general funds, and by the assignment passed to the assignee for the benefit of all the creditors of the bank, unincumbered by any liens or priorities in favor of the treasurer or collector.

It may be if the suit had been against either of them upon a note executed by him to the bank, that he could have pleaded any amount due him by the bank at the time of the assignment as a set-off thereto [Smith v. Spengler, 83 Mo.

408], but in this case, it is sought to set off against a suit by the assignee on notes executed by defendant to the bank which were due at the time of the assignment, the indebtedness of the bank to other parties, to no part of which did he become entitled to be subrogated until the conditions of the bonds signed by himself and others for the protection of the treasurer and collector, were complied with by them.

Huse v. Ames, 104 Mo. 91, was a suit by the assignee of an insolvent corporation on an account, and, it was held that a defendant's equitable set-off to be available, must in such case exist at the time of the assignment.

The court observed: "The status of the creditors is fixed by the assignment in trust for them. If the right of set-off exists at that time it continues as against the assignee. If there is at the time an equitable right in favor of a creditor to a set-off or to any of the property assigned that right is not disturbed by the assignment, but the equitable right must exist at that time, and this is true whether the creditor is or is not a surety. Here the defendant had no equitable set-off at the date of the assignment, and he, therefore, has none now." [See, also, Homer v. Bank, 140 Mo. 225.] No right of set-off existed in favor of either the treasurer or collector as against the bank at the time of its assignment, because neither of them owed it anything, therefore, defendant acquired none. Had the right of set-off existed in favor of the treasurer and collector against the bank at the time of its assignment, then defendant by being subrogated thereto, would have acquired such right, and could have pleaded it as an equitable set-off to this suit, if it accrued before its institution, although after the assignment. [Huse v. Ames, *supra;* Homer v. Bank, *supra.*] But no such right existed in favor of either of them.

Moreover, defendant by being subrogated to the rights of the treasurer and collector is entitled to his *pro rata* of the bank's indebtedness to them, and their equities in connection

therewith, but as he did not by reason thereof acquire the right to have such indebtedness set off against the notes sued upon in this case, his right to do so must be regarded as extending no further back than the time of the satisfaction of the bonds, which was subsequent to the assignment.

Furthermore, in no event could he have been subrogated to more than his *pro rata* part of the indebtedness of the bank to the treasurer and collector, and he and others having satisfied this indebtedness were jointly entitled to be subrogated to it as a whole, and not to any particular part thereof. It could not be portioned out among them and a separate action maintained by each one for his proportionate part, and for like reason defendant could not plead his *pro rata* part as a set-off in this case. A part of the debts could not have been assigned by the persons to whom due after the assignment, without the consent of the assignee [Barnett v. Crandall, 63 Mo. 410], and certainly no greater right could be acquired by being subrogated thereto.

But it is claimed by defendant, if he is not entitled to be subrogated to the creditor's rights in the deposits, but must stand upon the implied promise to reimburse him for money paid after the assignment as surety for the bank but before the commencement of the suit, that he is entitled to plead the same as a set-off. We are not however impressed with the logic of this contention. There was no assignment by the creditors or either of them to defendant of their demands, hence it is only by being subrogated to their rights that defendant could plead them as a set-off to this suit. Indeed the answer is framed upon this theory alone.

With respect to the third equitable set-off, it is claimed by defendant that the money obtained from the National Bank of Commerce, to wit, $25,000, on November 15, 1894, was upon a note the payment of which was guaranteed by himself and others, which guarantee was obtained by fraud practiced upon them by the cashier of the Citizens' Stock

Bank, and as the money thus obtained went into the coffers of the bank and helped to swell its assets, it by reason of said fraud became a trust fund for the use of defendant and his co-guarantors, and he having paid his *pro rata* part of the money thus obtained, to wit, $2,500, a right of action accrued to him as soon as the money was obtained.    We are unable to see how the money obtained by the Citizens' Stock Bank, upon a note whose payment defendant and others were induced to guarantee by reason of false and fraudulent representations, when deposited in said bank became a trust fund for their benefit, and no reason is given in defendant's brief why it is so.    And as defendant as guarantor paid the money for the Citizens' Stock Bank, after the bank assigned, he can not set off the amount paid against the notes sued on.

This question was before this court in Huse v. Ames, *supra,* in which it is said:    "While the insolvent is not bound to pay otherwise than according to his contract, it is considered no hardship that he should accept payment of a demand owing to him before maturity.    Hence, it has been often ruled in the State of New York, and is now the law of this State, that, if the claim against the assignee was due at the date of the assignment, then there is an equity because of the insolvency of the assignor, and the debt so due may be set off against the claim in favor of the assignee, though the claim held by the assignee was not due at the date of the assignment.    [Smith v. Spengler, 83 Mo. 408; Smith Felton, 43 N. Y. 419; Smith v. Fox, 48 N. Y. 674; Coffin v McLean, 80 N. Y. 560.]    But the claim against the assignee must be due at the date of the assignment, and if it is not then due, there is no equitable set-off.    [Keep v. Lord, 2 Duer. 78; Myers v. Davis, 22 N. Y. 489; Chipman v. Bank, 120 Pa. St. 86.]    A demand can not be set off because of the insolvency of the plaintiff in equity any more than at law, unless it existed against the plaintiff, in favor of the defendant, at the time of the commencement of the suit, and had

then become due. [Reppy v. Reppy, 46 Mo. 57; Spaulding v. Backus, 122 Mass. 553; Pomeroy, Eq. Jur., sec. 704; Lockwood v. Beckwith, 6 Mich. 168.] . . . . To justify a set-off against an assignee for the benefit of creditors there must be a present debt due at the date of the assignment. In this respect a surety stands on no better footing than any other creditor. The defendant had no such debt against the assignor at the date of this assignment. Indeed, he had no such debt when this suit commenced." [See, also, Homer v. Bank, *supra*.]

Our conclusion is that the demurrer was properly sustained, and that the judgment should be affirmed. It is so ordered.

GANTT, P. J., and SHERWOOD, J., concur.