COM. P. STORTS, Assignee, etc., Respondent, v. DORO-
THY P. MILLS, Appellant.

**Kansas City Court of Appeals, March 3, 1902.**

1. **Assignments:** STATUTE: RATABLE DISTRIBUTION. The in-
tention of the assignment statute is to make ratable distribution of
the assignor's assets without preference.

2. ———: ESTATE OF ASSIGNEE: EQUITIES. An assignee for
creditors takes the assigned estate subject to all equities existing at
the time of the assignment; and the status of debtors and creditors
become fixed at that time.

3. ———: SETOFF: MUTUAL INDEBTEDNESS. If there exists
at the time of the assignment a mutual indebtedness between the as-
signor and his debtors, the right of setoff exists, but such right can
not arise thereafter.

4. ———: ———: ———: COLLECTION OF COLLATERALS. The
depositor in an assigned bank, after the assignment became pos-
sessed as collateral securities of certain notes belonging to the bank
and collected them so as to be owing the bank an excess. *Held*, he
could not offset his deposit in the bank against such excess but must
pay the same to the assignee and take his ratable portion of the as-
sets.

5. ———: ———: ———: ———: INSTRUCTIONS. Certain in-
structions relating to a depositor's setting off his deposits against
his indebtedness to the assigned bank are reviewed and approved.

6. ———: PLEDGES: COLLATERAL SECURITIES: POSSESSION.
Collateral notes which are not in the possession of either pledgor or
pledgee can not be pledged to secure an existing debt since possession
is the very essence of a pledge.

Appeal from Jackson Circuit Court.—*Hon. E. L. Scarritt,*
Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1)   Instruction No. 4, asked by appellant, should have been given, because the testimony clearly showed that as between appellant and respondent's assignor, appellant was always the owner of the notes, and therefore had the right to apply the proceeds of the collateral to the payment of the balance due her from the assignor on account.   (2)   The respondent, as assignee for the benefit of creditors, had no greater rights as against appellant than the Citizens Stock Bank would have had if it had remained a going concern. Homer v. Bank of Commerce, 140 Mo. 225.   (3)   In indorsing the notes to the Bank of H. S. Mills appellant waived demand, notice of protest and protest, so that her liability to said bank on the notes was fixed upon their maturity without payment as between her and said bank.   The Citizens Stock Bank was indebted to her as a depositor in the amount in issue long before and at the time of the assignment, so that her relation to the Citizens Stock Bank as a creditor was fixed at the date of the assignment to respondent.   Even on respondent's theory he could not have sued her until long afterwards.   Hence, her right of counterclaim by reason of the deposit existed, and the proceeds of the collateral were properly applied to it.     Smith, Assignee, v. Spengler et al., 83 Mo. 408; Rubey, Assignee, v. Watson et al., 22 Mo. App. 428; Carr v. Hamilton, 129 U. S. 252; Scott v. Armstrong, 146 U. S. 499.   (4)   At the date of the assignment of the Citizens Stock Bank, December 17, 1894, it was insolvent, and at that time it was indebted to appellant to the amount of her deposit, which was then due.   The respondent, by virtue of the assignment, became entitled (when they should be collected) to the proceeds of the collateral remaining after paying the notes of his assignor (for which appellant was then liable to the Bank of H. S. Mills), less the amount of the deposit then due her. This was true not only by reason of the terms of the collateral

agreement, and the understanding between her and the Bank of H. S. Mills, but was true by reason of the principles of equitable set-off or counter-claim without any collateral agreement. Huse, Assignee, v. Ames, 104 Mo. 91; Green, Assignee, v. Conrad, 114 Mo. 651; Homer, Assignee, v. Bank of Commerce, 140 Mo. 225; Storts, Assignee, v. George, 150 Mo. 1. (5) The agreement made between the cashier of the Citizens Stock Bank and respondent on "Thanksgiving Day" in November, 1894, to the effect that the collaterals described in the written agreement executed to her should be held for her deposit in that bank, while unnecessary under the circumstances, was valid because of appellant's relation at that time to the collateral, and the fact that her deposit was subject to withdrawal at any time, and this promise was to induce her not to do so.

*Karnes, New, Hall & Krauthoff* for respondent.

(1) "It is well settled that an assignee, for the benefit of creditors, takes the assigned estate subject to all the equities existing with respect to the assigned estate at the time of the assignment." Homer v. Bank of Commerce, 140 Mo. 225; Chipman v. Bank, 120 Pa. St. 86; Burrill on Assignments (6 Ed.), sec. 361; Glass Co. v. Baldwin, 27 Mo. App. 44; Green v. Conrad, 114 Mo. 651; St. George's Church Society v. Branch, 120 Mo. 226; Douglass v. Cissna, 17 Mo. App. 44; Huse v. Ames, 104 Mo. 91; Kortjohn v. Bank of Commerce, 63 Mo. App. 166; Fera v. Wickham, 31 N. E. Rep. 1028, 135 N. Y. 223; Myers v. Davis, 22 N. Y. 489; Dixon v. Evans, 6 T. R. 57; Ogden v. Coley, 2 Johns. Rep. 273. (2) In Colebrook on Collateral Securities (2 Ed.), section 11, page 20, the head note is: "The possession of collateral securities necessary to sustain pledge." Christian v. Railroad, 133 U. S. 233; 18 Am. and Eng. Ency. Law (1 Ed.), pp. 595, 597; Conrad v. Fisher, 37 Mo. App. 352; Vanstone v.

Goodwin, 42 Mo. App. 39; Staples v. Simpson's Adm'r, 60
Mo. App. 73; Casey v. Cavaroc, 96 U. S. 467.

SMITH, P. J.—The Citizens' Stock Bank of Slater and
the Bank of H. S. Mills of Kansas City, were each incorpo-
rated banking associations organized under the statutes of this
State.

On April 3, 1894, the former, which, for convenience we
shall hereafter refer to as the Stock Bank, was indebted to the
latter, which we shall hereafter refer to as the Mills Bank, in
the sum of twenty-five thousand dollars, evidenced by two notes,
one for twelve and the other for thirteen thousand dollars; on
said day and year the Stock Bank executed to the said defend-
ant its two promissory notes for twelve and thirteen thousand
dollars, and respectively due sixty and ninety days after the
date thereof. Each of said notes were secured by certain col-
lateral notes described in a collateral agreement thereto at-
tached; defendant wrote a waiver of demand and protest on
said principal notes and indorsed the same in blank to the Mills
Bank, which thereupon cancelled and delivered to the Stock
Bank the two notes held by it, as already stated, for a like
amount. In September, 1894, while the Mills Bank held the
said two notes of the defendant and the collateral described in
the agreements attached, by the consent of the defendant, the
payee and indorser of said notes, certain of the said collat-
erals were released and others substituted in their stead.

On December 17, 1894, the Stock Bank being insolvent,
made, under the statutes, a general assignment by deed to the
plaintiff for the benefit of its creditors; at the date of said as-
signment by said Stock Bank, defendant had on deposit with
it, as appeared from its books of account, the sum of
$4,370.94; on December 24, 1894, there was due on said notes
of defendant to the Stock Bank, which were then held by the
Mills Bank, after allowing all credits for the amounts col-
lected by the latter on said collaterals, the sum of $21,700,

and on that day the defendant gave her note for said last-named amount to the Mills Bank, securing the same by a hypothecation of a certain number of the certificates of shares of the stock of said Mills Bank, held by her, and for which the said Mills Bank delivered to her the said notes, and uncollected collaterals which she had previously indorsed and delivered to it. The defendant, after the reinvestiture in her as aforesaid of the title to the said notes of the Stock Bank and the collaterals thereto belonging, collected on the latter an amount sufficient to discharge the said notes together with an overplus of $4,430.57.

This action was brought by the plaintiff assignee of the Stock Bank against the defendant to recover of her the said overplus so collected and in her hands. The defendant in her answer pleads as a set-off and counterclaim to the plaintiff's demand, the amount of her deposit with said Stock Bank at the time of the said assignment. There was a trial which resulted in judgment for the plaintiff and from which defendant appealed.

The statute (section 323, Revised Statutes) relating to assignments for the benefit of creditors provides that every voluntary assignment of lands, tenements, goods, chattels and credits made by a debtor shall be for the benefit of *all the creditors of the assignee in proportion to their respective claims.* In other provisions the assignee is declared to be a trustee for the benefit of creditors of his assignor, one of whose duties is to prosecute actions for property, *et cetera.* And in still others it is made his further duty, as soon as practicable after the assignment, to pay over to the creditors whose demands have been allowed as much as the means on hand will permit. It is clear that the intention of this statute is to provide for the ratable distribution of the assets of the assignor among his general creditors, and to allow any preferences among them would be to frustrate such intention. Kortjohn v. Bank, 63 Mo. App. 166.

It is the well-settled doctrine in this State that an assignee for the benefit of creditors, takes the assigned estate subject to all equities existing with respect thereto at the time of the assignment. Homer v. Bank, 140 Mo. 225; Green v. Conrad, 114 Mo. 651; Huse v. Ames, 104 Mo. 98. The status of both the debtors and creditors of the assignor became fixed by the assignment, in trust for the latter. Huse v. Ames, 104 Mo. 91; St. George v. Branch, 120 Mo. 226; Storts v. George, 150 Mo. 1; Homer v. Bank, 140 Mo. 225; Stephens v. Schuchmann, 32 Mo. App. 333; Chipman v. Bank, 120 Pa. St. 86. And whether or not under the statute (section 4487, Revised Statutes) the right of set-off exists between an assignee of an insolvent and a debtor in favor of the latter or vice versa, depends upon whether or not at the time of the assignment there existed a mutual indebtedness between the insolvent and the debtor, that is to say, such as would have entitled the insolvent to an action against the debtor, and the debtor to an action against the insolvent. Frowein v. Calvird, 75 Mo. App. 567; Weiss v. Wahl, 5 Mo. App. 408; McCuin v. Frazier, 38 Mo. App. 63. It follows from this that where no right of set-off exists when an assignment by an insolvent for the benefit of creditors is made, it can not arise afterwards in favor of one indebted to the insolvent estate who is also a creditor. Fera v. Wickham, 135 N. Y. 223, and cases there cited; Ogden v. Cowley, 2 Johns. 274; Dickson v. Evans, 6 T. R. 57; Gluck & Becker on Receivers, 400-1; Beach on Receivers, sec. 703; High on Receivers, sec. 249; 22 Am. and Eng. Ency. Law (1 Ed.), 310. The application of this rule is illustrated in great variety of adjudications, some of which are referred to in the brief of the plaintiff's counsel. This rule is necessary to secure equality among general creditors and prevent preferences. It is consistent with the spirit and intention of the statute.

At the time of the assignment in the present case the defendant was a creditor but not a debtor of the insolvent bank.

No question as to the right of set-off at the time of the assignment can properly arise in the case. The defendant, after the assignment, acquired collateral securities in which the insolvent bank and its assignee had an equitable interest. She collected on these collaterals more than enough to discharge her debts. She now claims the right to apply this excess to the satisfaction of her claim against the insolvent bank for the deposit she had with it at the time of the assignment. As the right of set-off for which defendant contends arose after the assignment, and as there was not at the time of such assignment any mutual indebtedness existing between her and the said insolvent, it is plain that according to principles to which we have just adverted, it can not be recognized. The recognition of any such right would be to establish a preference in favor of the defendant over the other general creditors which would prevent the ratable distribution of the assets of the insolvent bank among them, which would be contrary to the intention of the statute. The general creditors were entitled, through the assignee, to recover the amount collected by her on the collaterals in excess of her debt, and to have the same ratably distributed among them. Having had her claim on account of her deposit allowed as she did, she was only entitled to share *pari passu* with them.

The court, at the instance of the plaintiff, told the jury in substance that if the defendant, for value received, indorsed and delivered to the Mills Bank the two notes, one for $12,000 and the other for $13,000, and turned over to it said collaterals without an agreement that said notes should be held as her property, then it became the real owner thereof and any redelivery of them thereafter to defendant did not entitle her to the excess of said collaterals over the amount required to pay off said notes, the interest thereon and the reasonable expenses of collecting same. Those given for the defendant were but the converse of those given for the plaintiff. They, in effect, declared that if it was agreed that the said notes were to re-

main the property of defendant and were turned over to the Mills Bank as a matter of convenience to her, then she had the right to collect the collateral and make the application of the proceeds to the payment of her notes and the deposit due her. The rule embodied in these instructions was properly applicable under the pleadings and evidence in the case.

The defendant complains of the action of the court in refusing an instruction requested by her which was to the effect that if on Thanksgiving Day in 1894 the cashier of the Stock Bank agreed with defendant that she should hold the notes for any and all indebtedness due her from said bank, that then she was entitled to the set-off claimed by her. It will be remembered that this Thanksgiving agreement was made while the Mills Bank was the legal owner of and in possession of the two notes and the collaterals. The defendant was not, as the jury found, the legal owner of the notes and collaterals. The collaterals pledged were not in her possession at the time of the agreement, and, therefore, such pledge was invalid. Vanstone v. Goodwin, 42 Mo. App. 39; Staples v. Simpson, 60 Mo. App. 73; Conrad v. Fisher, 37 Mo. App. 352; Casey v. Cavaroc, 96 U. S. 467. The Stock Bank could not make to the defendant a valid pledge of collaterals which were in the possession as owner of neither, but in that of the Mills Bank. The possession is the very essence of a pledge, without which it is ineffectual. The refusal of this instruction did not harm defendant because the jury found from the evidence, under proper instructions, that the two notes and collateral were at the time of the "Thanksgiving agreement the property of the Mills Bank and that the same were not held by that bank as a mere matter of convenience to her and as her property." Had this instruction been given it is plain that the result could not have been different.

Defendant, as far as we are able to discover, has assigned no sufficient reason why the judgment should be disturbed, and accordingly it will be affirmed. All concur.