## W. ESPY CURTIS v. SAMUEL E. SEXTON, Appellant.

### In Banc, July 10, 1913.

1. **BILL OF EXCEPTIONS: Time of Filing: Amendment of 1911.** Since the amendment of 1911 to Sec. 2029, R. S. 1909, time is no longer of the essence in the filing of a bill of exceptions. Where a timely order was made in November, 1908, granting to appellant leave to file his bill of exceptions on January 3, 1909, and no bill was filed within that time and no extension of the time in which to file was made, such bill may be filed at any time before the appellant shall be required by the rules of this court to serve his abstract upon respondent, or even thereafter upon

compliance with the second proviso of said amendment. [GRAVES, J., with whom LAMM, C. J., and WALKER, J., concur, dissenting, for the reasons stated in Craig v. Railroad, 248 Mo. 270, and Ottumwa Bridge Co. v. Corrigan, 251 Mo. 667.]

2. CERTIORARI: Supreme Court: Superintending Control Over Court of Appeals. Upon a reconsideration of State ex rel. Curtis v. Broaddus, 238 Mo. 189, it is again *held* that the Supreme Court has power, by its writ of *certiorari*, to quash the judgment of a court of appeals, and to compel that court to proceed to retry a cause in accordance with an opinion previously rendered therein by the Supreme Court on a former appeal.

3. APPELLATE JURISDICTION: Former Decision: Act of 1911. The Act of 1911, Laws 1911, p. 190, declaring that "the Supreme Court shall retain and have full, exclusive appellate jurisdiction in any case pending in which the Supreme Court has made any decision or ruling," gave the Supreme Court appellate jurisdiction of every cause pending in any court at the time of the passage of the act in which the Supreme Court prior thereto had made any decision or ruling.

4. PARTNERSHIP: Dissolution: Not Denied Under Oath. An allegation in the petition that defendants were partners at the time the contract sued on was made and at all times mentioned in the petition, unless put in issue by an affidavit filed by defendant with his answer, is taken as admitted, and no burden rests upon plaintiff to prove it, even though between the making of the contract and the time it was to be performed and was breached the partnership had been dissolved.

5. ———: ———: As to Existing Obligations. A partnership dissolved as to all the rest of the world is not dissolved as to a plaintiff who held a joint subsisting contract as to its members, so as to prevent one partner being bound by dealings with or notice and tender made to another partner.

6. ———: ———: Waiver: Notice. Notice to one partner is notice to his copartners, and waiver of tender by him is likewise binding upon them.

7. CONTRACT: Breach: To Purchase Land: Time of Essence. Where the members of a partnership entered into a contract with plaintiff for the purchase of land, with a condition that, if on October 6, 1890, he so desired, they would, upon a reconveyance of the land to them, pay him back all he had paid for the land, with interest, time was not of such essence of the contract as required plaintiff to tender a deed on October 6, 1890, but such tender could have been, and was, waived, by letters from plaintiff to one of the partners, written shortly prior to said date, notifying him that he elected to reconvey, demanding the money due, and asking them to send him the

money, along with a deed for him to execute, all of which were received by said partner, whose replies simply denied his ability to repay the money.

8. ————: **Hardship.** Where the parties to a contract were adults at the time it was made, and there was no fraud or mistake, the law simply enforces the contract as made, and does not attempt to make one for them, or to relieve either from the performance of its plain terms.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*A. F. Evans* for appellant.

(1) By an unbroken line of decisions covering the period since the adoption of the consitutional amendments in 1884, more than twenty-five years, the Supreme Court has held that it has no power or authority, by writ of *certiorari*, mandamus or prohibition, to review, direct or control the decisions of the Courts of Appeals in cases in which the Courts of Appeals are invested by the Constitution and laws of the State with jurisdiction to adjudge, even though its judgment on the merits be erroneous, or in conflict with the opinions of the Supreme Court, except in cases certified by the Court of Appeals, or one or more of the judges thereof, to the Supreme Court in the manner prescribed in section 6, article 6, of the Constitution of Missouri, Amendment of 1884. In re Garesche, 85 Mo. 469; State ex rel. v. St. Louis Court of Appeals, 99 Mo. 216; State ex rel. v. Smith, 101 Mo. 174; State ex rel. v. Smith, 105 Mo. 6; State ex rel. v. Smith, 107 Mo. 527; State ex rel. v. Rombauer, 125 Mo. 632; State v. Railroad, 143 Mo. 33; Railroad v. Smith, 154 Mo. 300; State ex rel. v. Smith, 173 Mo. 398; State ex rel. v. Broaddus, 207 Mo. 107; Bradley v. Ins. Co., 163 Mo. 553; Bradley v. Ins. Co., 163 Mo. 559; Gipson v. Powell, 167 Mo. 192; Schafer v. Rail-

road, 144 Mo. 170; Bank v. Woester, 144 Mo. 407.; Wilden v. McAllister, 178 Mo. 732; Rogers v. Ins. Co., 186 Mo. 248; State ex rel. v. Smith, 129 Mo. 585; State ex rel. v. Phillips, 96 Mo. 570; Sublette v. Railroad, 198 Mo. 192; Constitution of Mo., Amend. of 1884; R. S. 1909, secs. 3927, 2083; Zeller v. Surety Co., 210 Mo. 86; Vail v. Dunning, 44 Mo. 210. The Supreme Court did not have jurisdiction of the *certiorari* proceedings, or of the subject-matter thereof, and did not have jurisdiction to make or enter, or to direct to be made or entered, any judgment or order in this cause. (2) The judgment of the Supreme Court in the proceedings entitled State ex rel. v. Broaddus, is void because it is in violation of section 1, article 14, Amendments of the Constitution of the United States. (a) Sexton was not a party to that proceeding; yet the Supreme Court therein attempted to adjudge and determine his rights. Persons who are party to the record sought to be annulled, or who are interested in maintaining the regularity of the proceedings of which a review is sought, should be made parties defendant, in proceedings on *certiorari*. 4 Ency. Pl. & Pr. 183; 2 Spelling on Extra Remedies (2 Ed.), sec. 1977, 1991; Commonwealth v. Peters, 3 Mass. 229; State ex rel. v. Denton, 128 Mo. App. 304; Cornell v. Chandler, 11 Tex. 249; Commonwealth v. Wildwood, 60 N. J. L. 365; McFall v. Dorer, 57 Atl. (N. J.) 136; Mitchell v. Harrison, 32 Tex. 331; Black v. Brinkley, 54 Ark. 372; State v. West Hoboken, 39 N. J. L. 421; Harris on Certiorari, secs. 82 and 102; R. S. 1909, sec. 2078. (b) Notice and hearing, before property is taken or rights or privileges withdrawn, are of the essence of due process of law. Garfield v. United States, 211 U. S. 249; Simon v. Craft, 182 U. S. 436; Hooker v. Los Angeles, 188 U. S. 314; Windsor v. McVeigh, 93 U. S. 274; State ex rel. v. Walbridge, 119 Mo. 394. (c) "Due process of law," guaranteed by the Fourteenth Amendment of the United States Consti-

Curtis v. Sexton.

tution, which rights have been denied to said Sexton, requires that there be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; legal notice to the party whose rights are to be determined; that the tribunal shall act judicially in all things and not transcend the power conferred by the law; that the established modes of procedure shall be observed; that such procedure be adapted to the end to be attained; that the party whose rights are to be affected shall have an opportunity to be heard respecting the justice of the judgment sought, and that the tribunal shall have jurisdiction of the subject-matter and of the parties. Pennoyer v. Neff, 95 U. S. 733; Ex Parte Neilson, 131 U. S. 176; Windsor v. McVeigh, 93 U. S. 274; Hagar v. Reclamation District, 111 U. S. 701; Scott v. McNeal, 154 U. S. 34; Cotting v. Goddard, 183 U. S. 79; Burton v. Platter, 10 U. S. App. 657. (3) If the Supreme Court had jurisdiction in the proceedings on *certiorari*, it exceeded its jurisdiction in such manner as to violate the Fourteenth Amendment to the Constitution of the United States: By section 3, article 6, Constitution of Missouri, Amendment of 1890, it is ordained that "the opinions of each division [of the Supreme Court] shall be in writing, and shall be filed in the causes in which they shall be respectively made during the term in which the cause is submitted, and such opinions shall be a part of the records of the Supreme Court." By Sec. 2087, R. S. 1909, it is enacted that, "In each case determined by the Supreme Court, or Courts of Appeals, or finally disposed of upon a motion, the opinion of the court shall be reduced to writing and filed in the cause, and shall show which of the judges delivered the same, and which concur therein or dissent therefrom." By Sec. 2088, R. S. 1909, it is enacted that, "The opinions shall always contain a sufficient statement of the case,

so that it may be understood without reference to the record and proceedings in the same." By Sec. 3845, R. S. 1909, it is enacted that, "The Supreme Court of the State of Missouri, shall keep just and faithful records of their proceedings." Courts of record can speak only through their records, and parties have a right to rely upon them. High's Extra. Legal Rem. (2 Ed.), sec. 479; Medlin v. County, 8 Mo. 235; State to use v. Sanger, 28 Mo. 314; Kansas City v. Railroad, 81 Mo. 285; Cummings v. Brown, 181 Mo. 711; Henry County v. Salmon, 201 Mo. 136; Milan v. Pemberton, 12 Mo. 598; State ex rel. v. Rose, 118 Mo. 23. By Sec. 2033, R. S. 1909, a bill of exceptions, when signed and filed, forms part of the record of the cause in which it is filed. Consault v. Lindell, 7 Mo. 251; Garth v. Caldwell, 72 Mo. 622. By Sec. 2048, R. S. 1909, it is provided that the appellant, or plaintiff in error, shall file printed abstracts of the entire record of the cause, in the office of the clerk of the appellate court, "and the clerk of the appellate court shall preserve at least one copy of all such abstracts and brief, or briefs accompanying the same." By Sec. 3941, R. S. 1909, it is provided that briefs made under the rules and regulations of the Supreme Court and Courts of Appeals, "shall be filed with the opinion of the court, by the clerk thereof, and become part of the papers in the case." On the face of the opinion and judgment of the Supreme Court, in the cause entitled State ex rel. v. Broaddus, above referred to, it appears that the finding and judgment of the Kansas City Court of Appeals in the case of Curtis v. Sexton, 142 Mo. App. 179 (that the opinion of the Supreme Court in the case of Curtis v. Sexton, 201 Mo. 217, was based upon facts essentially different from the facts in the cause then pending before the Court of Appeals), was and is justified; and it also appears that the finding and judgment of the Supreme Court in the proceedings entitled State ex rel. v. **Broaddus, that the facts on which**

the opinion and judgment of the Supreme Court in Curtis v. Sexton, 201 Mo. 217, were based and the facts shown by the abstract of the record before the Court of Appeals, in the second appeal, in the case of Curtis v. Sexton, were not the same, and the opinion predicated, in violation of said section 2088, upon some reference made by the Supreme Court to facts *dehors* the opinion of the Supreme Court in the case of Curtis v. Sexton. Under the mode prescribed by the State of Missouri for the trial of causes of the character of the case at bar, issues must be framed and tried and determined in a trial court, in this case, the circuit court of Jackson county. The party deeming himself aggrieved has the right to take his cause, in the manner prescribed by law, to the court having appellate jurisdiction, to which his cause is, by law, assigned. An appellate court, exercising its appellate jurisdiction, must dispose of a case as it was made, not as it might have been made. Williams v. Walsh, U. S. Sup. Ct., Adv. Sheets Feb. 15, 1912, p. 137. The evidence preserved in the bill of exceptions taken at the first trial of Curtis v. Sexton was not offered in evidence at the second trial, as it might have been, had the case then been tried, even on the part of plaintiff, on the theory that issues (which were then, in fact, submitted, on suggestion of plaintiff's counsel, to the jury) had been adjudged and concluded by the Supreme Court. Therefore, the evidence was not before the Court of Appeals in the appeal from judgment rendered in the circuit court, at the second trial. There is no lawful way in which new evidence may be introduced in a cause pending on appeal, in an appellate court, in this State. Nor has an appellate court the lawful power to even remand a cause to a trial court, at the instance, or in the interest, of a party who did not complain and appeal in the manner by law prescribed, of and from the action of the trial court, in order that such party may mend either his pleading, or his proof.

The only way in which the evidence contained in the bill of exceptions taken at the first trial of Curtis v. Sexton could have been lawfully gotten before the Court of Appeals on the appeal from the judgment at the second trial, was to have offered it in evidence at the second trial, in the trial court, and to have included it in the final bill of exceptions. Cantwell v. Land Co., 199 Mo. 1; Atchison v. Railroad, 94 Mo. App. 572; Gray v. St. Louis, 221 Mo. 1; Virtel v. Virtel, 212 Mo. 562. A party who does not appeal cannot complain. Kansas City v. Railroad, 187 Mo. 146; In re Switzer, 201 Mo. 66. A party cannot complain of an error invited by himself. Carp v. Queen Ins. Co., 203 Mo. 295; Hogin v. Hinchey, 195 Mo. 527. Where the court has adopted an erroneous theory of a case at the instance of one or both of the parties, the party inviting the error will not be permitted to urge the error on appeal, for he must stand in the appellate court on the theory assumed by him in the trial court. Hof v. Transit Co., 213 Mo. 445; Tube Works Co. v. Mach. Co., 201 Mo. 30; Henry County v. Bank, 208 Mo. 209; Detring v. Transit Co., 109 Mo. App. 524; Land Co. v. Zeiter, 182 Mo. 265; 3 Cyc. 243, 250. At a subsequent trial of a cause, a bill of exceptions taken at a former trial may be used as a deposition. R. S. 1909, sec. 6345; O'Brien v. Transit Co., 212 Mo. 59. There can be but one bill of exceptions. Bank v. Thornborrow, 109 Mo. App. 639. And such bill of exceptions is subject to same objections as depositions. Atchison v. Railroad, 94 Mo. App. 572; Cantwell v. Land Co., 199 Mo. 1. Under the guise and pretense of construing a former opinion of the Supreme Court, the judges who concurred in the majority opinion in the *certiorari* proceedings, rendered an opinion and judgment on the issues of law and fact involved in the case of Curtis v. Sexton, which had never been rendered before. To this new opinion, rendered in November, 1911, they seek to give

retroactive effect and thereby annul jurisdictions already exerted by the Kansas City Court of Appeals, at its October term, 1909, and to determine the rights of Sexton as of date of February 22, 1907. Fayerweather v. Rich, 195 U. S. 276. The common law writ of *certiorari* is not adapted to the purposes of determining controversies between litigants and cannot be used as a substitute for appeal or writ of error. The judgment of an inferior court cannot be revised as to matter of fact, on writ of *certiorari*. The writ of *certiorari* brings up the record, only, of the inferior tribunal and nothing *dehors* the record can be considered by the reviewing court. The return to the writ is conclusive. Whether the proceeding by *certiorari* is regarded as one merely to set aside proceedings in excess of the jurisdiction of the inferior tribunal, or as including the power to review errors committed in the exercise of existing jurisdiction, the return is conclusive; the attack made must be supported solely by the record which is brought before the superior court, and the parties cannot go beyond it to show either the existence of alleged errors, or that the judgment sought to be annulled is in excess of the jurisdiction of the court, or was so entered in a case in which it had no jurisdiction whatever, over the subject-matter, or of the parties against whom the judgment was rendered. The alleged error must appear affirmatively. Ward v. Board of Equalization, 135 Mo. 319; State ex rel. v. Court of Appeals, 99 Mo. 216; State ex rel. v. Smith, 101 Mo. 175; State ex rel. v. Edwards, 104 Mo. 126; State ex rel. v. Shelton, 154 Mo. 692; State ex rel. v. Bland, 168 Mo. 1; State ex rel. v. Wooten, 139 Mo. App. 231; State ex rel. v. Casey, 210 Mo. 235; State ex rel. v. Wells, 210 Mo. 601; Railroad v. State Board, 64 Mo. 296; State ex rel. v. Mosman, 231 Mo. 474; In re Saline County, 45 Mo. 52; Railroad v. Martin, 27 Mo. 317; State v. Powers, 68 Mo. 491; State v. Walbridge, 62 Mo. App. 162; Wait v. Railroad, 204

Mo. 491; State ex rel. v. Board of Equalization, 108 Mo. 242; Los Angeles v. Young, 118 Cal. 295; 6 Cyc. 823, 829; Fore v. Fore, 44 Ala. 478; North v. Joslin, 69 Mich. 624; Tewksbury v. Commissioners, 117 Mass. 563; Barclay v. Barbston, 49 N. J. L. 629; Emery v. Braun, 67 Me. 39; Lee v. Commissioners, 125 Ill. 47; People v. Talmage, 46 Hun, 606; State v. Kemen, 61 Wis. 494; People v. Fire Commissioners, 73 N. Y. 437; Frederick v. Clark, 5 Wis. 191; Alexander v. Archer, 21 Nev. 22; Commissioners v. Carthage, 21 Ill. 140; State v. Fort, 24 S. C. 510; Iron Co. v. Schiebel, 29 Wis. 444.   (4)   The construction placed by the majority opinion, in the Supreme Court, in the *certiorari* proceedings, on the language, "the last previous rulings of the Supreme Court," of section 6, article 6, Constitution of Missouri, Amendment of 1884, places the case of Curtis v. Sexton in a class by itself, and is an arbitrary and unreasonable classification. The word "previous" means prior in point of time. Bangor v. Madawaska, 72 Me. 203; Lebrecht v. Wilcoxon, 40 Ia. 94; Hamilton v. County Court, 15 Mo. 3. The Act of March 30, 1911, is void. It is in conflict with Subdiv. 7, sec. 53, art. 4, Constitution of Missouri. It is in conflict with Subdiv. 32, sec. 53, art. 4, Constitution of Missouri. It is in conflict with Subdiv. 33, sec. 53, art. 4, Constitution of Missouri. State ex rel v. Hermann, 75 Mo. 341; State v. Ganneman, 132 Mo. 326; State v. Hill, 147 Mo. 63; State ex rel. v. County Court, 89 Mo. 237; Henderson v. Koenig, 168 Mo. 356; Murnane v. St. Louis, 123 Mo. 479; State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 100; O'Connor v. Transit Co., 198 Mo. 622. The application of said act to the case at bar is prohibited by Sec. 15, art. 2, Constitution of Missouri. Stevens v. Andrews, 31 Mo. 205; Vanata v. Johnson, 170 Mo. 269; 1 Freeman on Judgments (4 Ed.), sec. 90; 1 Black on Judgments, sec. 298. If the majority opinion of the Supreme Court is to become the law of this State,

judges of the Courts of Appeals are no longer the keepers of their own consciences, and it is difficult to conceive of a case which the Court of Appeals will have jurisdiction to decide.   (5) The gist of the unilateral agreement is the offer on the part of the defendant and Bracking to purchase the land of plaintiff "October 6, 1890, if he so desires and requests." Plaintiff should have accepted the offer and made his request within a reasonable time after the unilateral agreement was made.   The facts in this case rebut the presumption that it was intended by the parties that plaintiff could withhold his acceptance until October 6, 1890.   The distinction is justly taken by the authorities between a perfected contract, that is, where both parties are bound, and an option contract where one party is bound by a cable and "the other by not so much as a silken thread."   Hollman v. Conlon, 143 Mo. 369; Brown v. Massy, 138 Mo. 519; Durrett v. Hook, 8 Mo. 374; Waterman v. Banks, 144 U. S. 394. Where the contract does not fix the time within which it may be performed, the law implies that it shall be performed within a reasonable time; and this implication of the law is as much a part of the contract as if it were written there in words.   Blake Mfg. Co. v. Gaeger, 81 Mo. App. 239; Bryant v. Saling, 4 Mo. 522. (6)   The testimony offered by plaintiff wholly failed to prove an acceptance of the offer according to its terms.   Plaintiff never accepted the offer at any time. Armour v. Cason, 95 Mo. App. 426.   To constitute a contract the minds of the parties must assent to the same thing in the same sense, and the acceptance must be unequivocal, unconditional, and without variance of any sort between it and the proposal.   Perkins v. School District, 99 Mo. App. 483; Cockrell v. Bopp, 106 Mo. App. 355.   An acceptance of an option must in every respect meet and correspond with the offer, neither falling within, nor going beyond the terms proposed, but exactly meeting them at all points and

closing them just as they stand. Potts v. Whitehead,. 20 N. J. Eq. 55; Potts v. Whitehead, 23 N. J. Eq. 516;. Henry v. Black, 213 Pa. 620; Glass v. Rowe, 103 Mo. 513; Hollmann v. Conlon, 143 Mo. 369; Stembridge v. Stembridge, 87 Ky. 91. (7) Plaintiff wholly failed to show that defendant either authorized or ratified,. or had any knowledge of, any of the letters, introduced in evidence, written by Bracking to plaintiff; and the court erred in submitting the case to the jury on the theory that Bracking's letters could have the effect of relieving plaintiff of the obligation to tender a deed and offer to perform October 6, 1890. (a) If plaintiff accepted the offer, it became a binding contract for the sale of land and Bracking could not release Sexton's interest or discharge plaintiff from the obligation to carry out the contract, without defendant's. consent. A contract for the sale of land of which specific performance will be decreed has the result of effecting in equity a conversion of the vendor's interest in the land into money, and the purchaser's interest in the money to be paid by him into land. In the case of an option contract of sale, the conversion does not take place until the exercise of the option, so, that, on the vendor's death prior thereto, it would vest in his heirs, but in case the option is eventually exercised, conversion then takes place and operates. retrospectively so as to give the property to the personal representatives. 1 Tiffany, Mod. Law of Real Prop., sec. 111; Frank v. Stratford-Hancock, 13 Wyo.. 37. If the option agreement ever became mutual and binding, the defendant and Bracking became interested in the land as tenants in common, and the contract. could have been specifically enforced. R. S. 1889, sec. 8844; Real Estate Co. v. Spelbrink, 211 Mo. 671. A deed to former partners, made after dissolution of the partnership, will make them tenants in common. Allen v. Logan, 96 Mo. 591. One tenant in common cannot dedicate the property to public use, grant an.

easement, or bind the other without his consent, so as to affect his rights. St. Louis v. Gas Light Co., 96 Mo. 197; Nalle v. Thompson, 173 Mo. 595.   (b)   If the option agreement had not already been accepted, according to its terms, then no contract existed, and neither plaintiff's nor defendant's rights were in anywise affected by Bracking's letters.   Tilton v. Sterling C. & C. Co., 28 Utah, 173, 107 Am. St. 689.   Mere refusal by one party to a contract, before performance is due, will not obviate the necessity of tender by the other party.   Matterson v. U. S. & C. L. Co., 103 Minn. 407; Abbott's Trial Evidence (2 Ed.), 921.   (8)  The petition proceeds upon the theory that the subject-matter of the suit was a partnership transaction.   The evidence fails to show that defendant and Bracking ever owned any real estate in partnership; and shows conclusively that the only partnership that ever existed between them, i. e., in real estate commissions, was dissolved in the summer of 1888.   Plaintiff knew in May, 1888, that Sexton and Bracking had dissolved partnership.   Comfort v. Lyman, 67 Mo. 668; Rimel v. Hayes, 83 Mo. 200; Huyssen v. Lawson, 90 Mo. App. 82.   No admission or declaration made by a partner, after dissolution of the partnership, and notice thereof, is competent evidence against a co-partner, although relating to a contract which arises during the partnership.   Abbott's Trial Evidence (2 Ed.), p. 271; Flowers v. Heim, 29 Mo. 324; Brady v. Hill, 1 Mo. 315. (9)   Plaintiff can only recover, if at all, upon the theory of the case upon which his petition proceeds. Bank v. Campbell, 34 Mo. App. 45; Timber Co. v. Railroad, 180 Mo. 462; Vanhoosier v. Dunlap, 117 Mo. App. 529; Stix v. Matthews, 75 Mo. 96; Steinburg v. Ins. Co., 49 Mo. App. 255; Link v. Vaughn, 17 Mo. 585; Clements v. Yeates, 69 Mo. 623; Raming v. Railroad, 157 Mo. 477; Construction Co. v. Iron Works, 169 Mo. 137.   (10)   Plaintiff, by electing to prosecute his action against Sexton alone, without alleging any

reason or excuse for not making Bracking a party thereto, elected to treat his cause of action as a several liability, and not as a joint liability, and is bound thereby. The Practice Act does not affect the law of contracts, as it existed prior to its enactment. It deals only with the mode of procedure. R. S. 1899, sec. 889; Clark v. Cable, 21 Mo. 223; Olden v. Henderson, 4 Mo. 302; Slaughter v. Davenport, 151 Mo. 32; Bushnell v. Railroad, 126 Mo. App. 63. (11) Plaintiff's remedy, if any he had, was in equity. Tenney v. Turner, 111 Mo. App. 597; Maloney v. Real Estate, B. & L. Assn., 57 Mo. App. 384. (12) Plaintiff failed to perform the contract of purchase between himself and Bracking, in that he failed to pay the amounts due October 6, 1889, and October 6, 1890, on encumbrances which he assumed and agreed to pay, and by reason of his default, the property was sold under the deed of trust. (a) When he assumed the payment of those debts, they became his debts; he the principal debtor, and his vendor his surety. Bank v. Pettit, 85 Mo. App. 499; Heim v. Vogel, 69 Mo. 529; Fitzgerald v. Barker, 85 Mo. 13; Winn v. Lippencott Inv. Co., 125 Mo. 528. (b) He had agreed to make these payments to the holders of the notes secured by the deed of trust, not to defendant or Bracking, and the amounts could not be set off, or credited against the alleged indebtedness of defendant and Bracking to plaintiff. MacLeod v. Snider, 110 Mo. 298; Wellman v. Dismukes, 42 Mo. 101; Meyer v. Christopher, 176 Mo. 580; Sick v. Ins. Co., 79 Mo. App. 609; Billups v. Daggs, 38 Mo. App. 367; Craycroft v. Walker & Co., 26 Mo. App. 469; Cress v. Blodgett, 64 Mo. 449; Clay v. Mager, 183 Mo. 150.

*Robert F. Porter* for respondent.

(1) Plaintiff's bill of exceptions was not filed within the time allowed by the court and the time was not extended prior to the lapse of the time allowed

and the court therefore lost jurisdiction and could make no further orders in the case and there is consequently nothing before the appellate court but the record proper. There was no record evidence to justify any *nunc pro tunc* entry. Page v. Chapin, 80 Mo. App. 159; Burns v. Sullivan, 90 Mo. App. 1; State v. Baldwin, 109 Mo. App. 573; Railroad v. Holschlag, 144 Mo. 253; Ross v. Railroad, 141 Mo. 390; Woodridge v. Quinn, 70 Mo. 370. (2) A tender need never be shown where the party to whom it should be made refused in advance to accept it. Land Co. v. Baylor, 71 Mo. App. 99; McManis v. Gregory, 16 Mo. App. 382; Schilb v. Pendleton, 76 Mo. App. 454; Whelen v. Reilly, 61 Mo. 565; Mastin v. Grimes, 88 Mo. 489; Girard v. St. Louis, 123 Mo. 371; Blanton v. Kentucky Dis. Co., 120 Fed. 318; Dichman v. Dichman, 49 Mo. 107. Tender was waived and that there was no necessity for plaintiff to tender a deed, the evidence clearly establishing that a tender would be unavailing. (3) In reference to the point made that the partnership had been dissolved in the summer of 1888, in the first place this question is not in the case as there was no denial of partnership under oath and it therefore stood admitted. Haysler v. Dawson, 28 Mo. App. 538; R. S. 1899, sec. 746; 1 Ency. Pl. & Prac. 830; Greenway v. James, 34 Mo. 326. There was no notice to plaintiff of the dissolution but if it had been pleaded it would have been of no avail. The dissolution of the partnership did not effect existing obligations, and notice, tender, or demand on Bracking in reference to the enforcement of rights under the contract would be binding on Sexton and his letters showing notice to him were competent evidence against Sexton the other partner to establish the fact of notice to him. Bryant v. Hawkins, 47 Mo. 410; Abbott's Trial Practice, 272; 1 Bates on Partnership, sec. 707; Cady v. Shepherd, 11 Pick. 400; Bank v. Heuschen, 52 Mo. 407; Bank v. Altheimer, 91 Mo. 191. The general principle that one

partner cannot bind the firm or other members after its dissolution is recognized, but obligations executed by the firm during the existence of the partnership continue after dissolution and the.partners are jointly liable, and the rules governing joint obligors or an existing partnership as to the particular transaction governs, and both are bound by the acts and declarations of either. Maddox v. Duncan, 143 Mo. 621; Craig v. County, 12 Mo. 94; County v. Stewart, 64 Mo. 408; Schierbaum v. Schemme, 157 Mo. 21; Armstrong v. Farrar, 8 Mo. 627. The letters of Bracking were admitted without objection, and it is too late to make objections to evidence in instructions, or by motion to strike out. No objection was made to the evidence until the evidence was all in and the jury discharged for the day. Maxwell v. Railroad, 85 Mo. 106; Grain Co. v. Grain Co., 115 Mo. App. 542; Cannon Weiner v. Boswell, 117 Mo. App. 473; Falen v. Baker, 139 Mo. 284; Stewart v. Watson, 133 Mo. App. 48; State v. Bateman, 198 Mo. 212; State v. Forsten, 190 Mo. 296; Edwards v. Latimer, 183 Mo. 628; State v. Lehman, 175 Mo. 625. (4) The court properly refused defendant's instructions on the question of guaranty and properly instructed on the theory that plaintiff having signed as principal was bound as principal if at all. Coment v. Klemhepper, 70 Mo. App. 661; Convent v. Kleinhoffer, 76 Mo. App. 666; Carr v. Card, 34 Mo. 513; Bank v. Terry, 67 Mo. App. 16; Wood v. Motley, 83 Mo. App. 97; Bank v. Wells, 98 Mo. App. 581.

FARIS, J.—Plaintiff sued in the circuit court of Jackson county, to recover money which he claims to be due him under a written contract between himself and the partnership of which the defendant was a member. Plaintiff does not plead the contract by its legal effect, but sets it out in full in his petition, and alleges that defendant has broken the same.

This case has enjoyed a long and varied legal career. The facts upon which it is bottomed need not be set out here at length, since the case has been considered here once upon its merits, as will be seen by a reference to it under the style of Curtis v. Sexton, 201 Mo. 217, the point involved in the case then being whether there was sufficient evidence adduced by plaintiff in the trial below, to take the case to the jury. In the court below a demurrer to the evidence of plaintiff had been sustained. This court held that there was sufficient evidence to take the case to the jury, and thereupon reversed it. It was again tried on the 14th day of May, 1908, in the circuit court of Jackson county; the issues found for plaintiff, and a judgment rendered against defendant for the sum of $4543.75. Thereupon defendant, on the 6th day of November, 1908, was granted an appeal to this court in due form. By the further order of the circuit court appellant (whom we will style for convenience, defendant) was given, as the solemn records of that court show, until January 3, 1909, within which to file his bill of exceptions. He did not file the same within this time, but on the 12th day of January, 1909, came into the circuit court and filed his motion for an order *nunc pro tunc* to correct an alleged error in the record as to the time given him in which to file his said bill, setting forth in his motion that the order, as made by the court, gave him till the "third day of the January term, 1909;" but that by the error and misprision of the clerk in entering the order of the court, the same was erroneously made to read the "third day of January, 1909." In support of his motion defendant offered the affidavit of his counsel, in substance and to the effect that the order as actually made by the court recited the "third day of the January term, 1909," as the limit of time to file his said bill, and that his said counsel on returning to his private law office caused an entry to be made by one G. V. Hucke, the law clerk

of defendant's counsel, to the above effect. Defendant also offered the affidavit of said Hucke who corroborated the affidavit of counsel touching the latter's direction to him and as to the contents of the entry made by Hucke under the directions of counsel upon the private office docket of counsel.

There was also offered the minutes of the clerk as taken down by him at the time of the making of the order, as well as the formal record entry of said order in the circuit court records. Both the minutes and the solemn record show that the order expired on the third day of January, 1909, and not on the third day of the January term, 1909.

It is but fair to say, that when the above affidavits were offered and upon objections of plaintiff's counsel being lodged against the same, the trial court remarked that "he did not see how the affidavits helped defendant," to which counsel for defendant replied, "except to show diligence." Nothing else in the nature of evidence was offered to sustain the motion for a *nunc pro tunc* entry, but said motion was sustained by the court upon this showing, and further extension of time was granted. Other extensions were subsequently made, carrying forward the time to file the bill of exceptions till July 24, 1909, on which latter date the bill of exceptions was actually filed. Plaintiff (who is respondent here) duly took and filed his term bill of exceptions to the action of the court in granting the *nunc pro tunc* order above mentioned. Neither the bill of exceptions nor the abstract of the record as filed here by defendant contains the evidence upon which the trial court was induced to make the *nunc pro tunc* order; the defendant contenting himself with setting forth the original order as made, together with the *nunc pro tunc* order correcting the original order and extending the time to file. The plaintiff has, however, brought up in his additional abstract of the record all of the evidence taken by the court in this

behalf, as well as all other matters and things pertaining thereto.

Pending the appeal in this court, the jurisdiction of the several courts of appeals was changed, increasing their jurisdiction as to amount involved, to $7500; thereupon, and on the 13th of October, 1909, this cause was by this court transferred to the Kansas City Court of Appeals. It was heard in the Kansas City Court of Appeals, and on the 25th day of January, 1910, pursuant to an opinion filed in that court, it was in all things reversed. Again the facts are fully set out, as will be seen by reference to the case of Curtis v. Sexton, 142 Mo. App. 179. Thereafter, and on the 11th day of October, 1910, plaintiff filed his petition in this court for a preliminary rule *in certiorari*, which was granted by this court on January 11, 1911. This rule was made final by a judgment of this court, pursuant to opinion filed December 16, 1911, and the judgment theretofore rendered by the Kansas City Court of Appeals was quashed, and the latter court was ordered and directed to proceed to hear and determine said cause in accordance with the opinion of this court as contained in the case of Curtis v. Sexton, 201 Mo. 217. The opinion of this court, which also contains the facts in this cause, will be found reported under the style of State ex rel. Curtis v. Broaddus, 238 Mo. 189.

Thereafter on the 6th day of February, 1912, plaintiff filed his motion in the Kansas City Court of Appeals to transfer this cause back to the Supreme Court, because of the provisions of the Act of March 30, 1911. [Laws 1911, p. 190, amending Sec. 3937, R. S. 1909.] This motion was by the Kansas City Court of Appeals sustained and that court ordered the cause to be re-transferred to this court and the same is accordingly here.

There have been filed in this case since it was first decided by this court in 1907, more than a quarter of

a hundred motions, and suggestions, and counter suggestions, and suggestions in opposition; all of which are before us, accomplishing little good, except to becloud and befog the actual merits of the case and render the doing of justice more precarious and difficult. In its legal history and antiquity it may be likened to Jarndyce v. Jarndyce; and in the number and variety of the legal steps taken (some of which are actually involved), it may be consulted as a companion text to "Caruther's History of a Law Suit."

Should the above facts, when read in connection with the three expositions of facts as set out in the three opinions already rendered herein, prove to be not a sufficient statement of facts, others pertinent and necessary will be found in the subjoined opinion.

I. Before reaching and examining the merits, we must dispose of two contentions strenuously urged by learned counsel for plaintiff. These contentions are (a) that the bill of exceptions not having been filed within the time granted by the trial court, and that court having no authority to make the *nunc pro tunc* order, there is therefore no bill of exceptions before us, and we are relegated for error to what may be aptly called the "record proper;" and (b) that the abstract of defendant does not show that a motion for a new trial was filed and overruled. These in their order.

Upon the contention (a) that the bill of exceptions was not filed in time, we must as an academic proposition agree; but in the present condition of the law we cannot so hold. Prior to the passage of the Act of March 13, 1911, we are of the opinion that the point made by counsel for plaintiff would have been well taken, and that the contentions of defendant that plaintiff is concluded by the mere fact that the court below made the *nunc pro tunc* order is not well taken.

Bill of Exceptions: Time of Filing. Laws 1911, p. 139.

But in the view which we take of the law as it now exists, the discussion is, as stated, merely academic. Prior to the passage of the act mentioned, we must, upon the record here, have cast aside the bill of exceptions as not having been filed in time; we should have been compelled to hold that the burden of showing that the bill of exceptions was filed in time, was upon the defendant below (the appellant here), and to that end, since upon the *prima facie* showing his time to file the bill had expired, he must have shown a legal basis for the action of the court in making the order *nunc pro tunc*. If he failed to show this, it might well be, *nothing further appearing,* that a presumption would have been indulged in favor of the right action of the court below in making the *nunc pro tunc* order. But the right still lay in respondent (plaintiff below), to bring up by an additional abstract, such matters as had been, by a timely term bill of exceptions, made a part of the record, so as to show that no proper legal basis existed for the making of the *nunc pro tunc* order. By right, it was defendant's duty to make this showing; having failed, he cannot urge, as he does, that plaintiff was bound to appeal from a matter in which no appeal lay. Plaintiff, by his additional abstract, has brought up the complete record in a proper way, thus performing rightly a duty incumbent upon defendant in the first instance. On this showing, absent the statute referred to, we must have been relegated for error to the record proper alone. But as the law now is, we rule this point against plaintiff.

For many years, not here necessary to chronicle, the statute regulating the filing of bills of exceptions, stood thus:

"Sec. 2029. Such exceptions may be written and filed at the time or during the term of the court at which it is taken, or within such time thereafter as the court may by an order entered of record allow, which

252 Mo.—16

may be extended by the court or judge in vacation for good cause shown, or within the time the parties to the suit in which such bill of exceptions is proposed to be filed, or their attorneys, may thereafter in writing agree upon, which said agreement shall be filed by the clerk in said suit and copied into the transcript of record when sent to the Supreme Court or Courts of Appeals. All exceptions taken during the trial of a cause or issue before the same jury shall be embraced in the same bill of exceptions.''

Construing the meaning of this statute this court consistently held that, while extensions of time to file a bill of exceptions could be made by the trial court (an order to file such bill in vacation having theretofore been made of record); yet such extensions must be so made while the time of the former order, or an extension thereof, was still current and unexpired. [State v. Eaton, 191 Mo. l. c. 155.] When once the time had elapsed, *ipso facto* the power in the trial court of extending time to file lapsed, and the court below was sheared of jurisdiction. [Dorman v. Coon, 119 Mo. 68; Danforth v. Railroad, 123 Mo. 196.] Thus stood the statute and its construction when the Legislature amended and re-enacted it in 1911, so that it read thus:

''Section 2029. Such exceptions may be written and filed at the time or during the term of the court at which it is taken, or within such time thereafter as the court may by an order entered of record allow, which may be extended by the court or judge in vacation for good cause shown, or within the time the parties to the suit in which said bill of exceptions is proposed to be filed, or their attorneys, may thereafter in writing agree upon, which said agreement shall be filed by the clerk in said suit and copied into the transcript of record when sent to the Supreme Court or Court of Appeals: *Provided,* in all cases now and hereafter pending on appeal in the Supreme Court

and in any of the Courts of Appeals, the bill of exceptions therein may be allowed by the trial court, or the judge thereof in vacation, and filed in such court, or with the clerk thereof in vacation, at any time before the appellant shall be required by the rules of such appellate courts respectively to serve his abstract of the record, and for the purpose of determining whether such bill of exceptions shall have been filed within such time such appellate court shall make reference to its docket: *Provided,* that if for any reason the bill of exceptions cannot be allowed and filed within the time above provided, then the judge before whom such case was tried shall certify in writing such fact to the appellate court in which the appeal is pending, and such appellate court shall reset or continue such case for a sufficient time within which to enable such bill of exceptions to be allowed and filed, and in that event the time within which such bill of exceptions may be allowed and filed shall be determined by the time within which appellant's abstract must be served after such resetting or continuance. Hereafter no case now or hereafter pending in any appellate court shall be affirmed for failure to file a bill of exceptions within the time allowed by the trial court, but such case may be affirmed for failure to file a bill of exceptions within the time in this section provided, if error do not appear in the record of the case. All exceptions taken during the trial of a cause or issue before the same jury shall be embraced in the same bill of exceptions.

"Sec. 2. In view of the fact that many judgments are affirmed from time to time because the bill of exceptions in the actions in which such judgments are rendered are not filed within the time allowed by the trial court and are not considered upon the merits of the cause, an emergency exists within the meaning of the Constitution; therefore, this act shall take effect and be in force from and after its passage and approval." [Laws 1911, p. 139.]

The legislative intent looms large when we view by the four corners the section as amended, although it is carelessly and inartificially drawn. As it stood formerly, and as the first sentence of the section yet stands, there was no specific inhibition limiting the power of the trial court to extend for good cause shown the time to file a bill of exceptions, even after a lapse had occurred. · This construction, in all the States upon similar statutes, was, however, well nigh universal. [3 Cyc. 38, and cases cited.] As the new section now stands there is still nothing, either in the first clause or in the first proviso, which militates against the old holding. No reason is seen why or wherein the addition of the first proviso necessarily changed the rule or made possible the doing of anything which could have been done before the change was made. "Short-form" appeals, or appeals by an abstract of the record in lieu of a complete transcript, were just as feasible before the amendment as after the amendment, so far as the present first proviso and the first clause of the present statute are concerned. But when we come to construe the second proviso, we see for the first time a marked change. First, a new ground of continuance in the appellate court is provided for, in this, to-wit: "If for any reason the bill of exceptions cannot be allowed (settled?) and filed" by the time the rules of the appellate court require the abstract to be·served on the opposite side, "then the judge before whom such case was tried shall certify in writing such fact to the appellate court in which the appeal is·pending, and such appellate court shall reset or continue such case." Second, following this, we note this compelling language: *"Hereafter, no case now or hereafter pending in any appellate court shall be affirmed for failure to file a bill of exceptions within the time allowed by the trial court."*

That a case may yet be affirmed pursuant to subsequent provisions of the section, no error appearing

upon the record proper, upon the *failure of appellant* both (a) *to file his bill of exceptions* prior to the expiration of the time at which he is required to serve an abstract upon the opposing side, *and* (b) *to procure the certificate of the trial judge* entitling him to a continuance, is patent, but this fact is beside the question here.

The requirement that we must construe a statute or amendment thereof, in accord with the intention of the Legislature is fundamental. [State ex rel. Eaton v. Gmelich, 208 Mo. 152; Grimes v. Reynolds, 184 Mo. 679.] The intention here evidenced is plain and unmistakable. The language of the emergency clause also stands as a sign-post pointing to the legislative intent; as if it were a formal ''whereas,'' directing the mind to the thing intended to be done.

This case, as its chronology bears witness, was pending undisposed of when the amendment under discussion was adopted. It is a change in the law of legal procedure and may be invoked in the case to save the affirmance for failure to file the bill of exceptions in time. We hold that time is no longer of the essence, in the filing of a bill of exceptions, on an appeal to this court. Where a timely order is made, granting leave to file the bill of exceptions in vacation, such bill may be filed at any time before the appellant shall be required by the rules of this court to serve his abstract of the record on the opposing party, or even thereafter, upon compliance with the requirements of the second proviso of the section as now amended. The point (a) made by respondent is disallowed.

We have carefully examined the printed abstract of the record, filed herein, in lieu of a full and perfect transcript, and in our view this abstract is a sufficient compliance with the law and the rules of this court. Touching contentions of this sort, this court of late, in deference to substantial justice, has cast aside much

of technicality and has taken a broader view of matters relating to appellate procedure.  [Cf. Rule 32, Sup. Ct. Rules, adopted Dec. 10, 1912.]  That such a view is logical and more modern, and makes for right and justice, needs no argument.  If vital omissions in record entries have in fact happened, then respondent, upon a showing of the fact, or if the fact be manifest, is yet entitled to a dismissal of the appeal or an affirmance of the judgment, according as the facts shown may entitle him.  But if all such jurisdictional record entries were in fact made below and are so stated in the abstract to have been made, why require an intricate, factitious and fastidious recital of the manner and means thereof.  The abstract is held sufficient and the point disallowed to respondent.

II.  Coming now to the points urged upon us by defendant, we are met. *in limine* by the contention, most earnestly, not to say vehemently, urged by his learned counsel, that this court was wrong in the action which it took in the case of State ex rel. Curtis v. Broaddus et al., 238 Mo. 189; that this court had no authority under the Constitution to quash the judgment of the Kansas City Court of Appeals and to direct that court to proceed to hear and determine this case in accordance with the holding of this court when the case was first here on appeal (201 Mo. 217); that under the Constitution and the facts here the judgment of the Kansas City Court of Appeals was final and this court is now without jurisdiction to hear and determine this case.  (The minute details of the contentions will be seen by a reference to the case of State ex rel. Curtis v. Broaddus et al., 238 Mo. 189, and to the brief of counsel there for respondent, who is counsel here for appellant, and the same need not here be set out at length.)

Supreme Court: Superintending Control Over Courts of Appeals.

We have examined this contention with the utmost care, and inasmuch as a contrary ruling here must of necessity involve the overruling of State ex rel. Curtis v. Broaddus et al., supra, we have taken the precaution again carefully to examine our position on the questions involved. In the above case, when it was considered here on the *certiorari* proceeding, six members of this court approved the conclusion that the power of this court under the Constitution, and by virtue of the duty enjoined upon it thereby, was ample, and the following language, l. c. 224, which occurred both in the majority opinion and in the dissenting opinion by FERRISS, J., was approved:

"Said section 6 of the Amendment of 1884, in speaking of prior decisions of the Supreme Court, is obviously referring to prior decisions in other cases. In has never, so far as we are advised, been contended in this court that when this court has declared the law upon a given state of facts, a Court of Appeals is at liberty, upon the same facts, *in the same case,* if it shall come before that court through subsequent proceedings, to refuse to follow the decision of this court. A decision by this court upon a point presented in a case becomes the law of the case upon that point. It is in the nature of *res adjudicata* upon that question. In further proceedings in the same case before a Court of Appeals, the prior decision of this court must be followed, when the same point is presented upon the same facts. If that court attempts to disregard· the decision of this court, upon such point it exceeds its jurisdiction. When a court acts without jurisdiction, or in excess of its jurisdiction, it is in error, and the error may be reached by *certiorari.* This court said in M. K & T. Ry. Co. v. Smith, 154 Mo. l. c. .308, 'Courts at all times are under the imperative duty first to inquire into its authority to try a cause, and then to keep within the proper limits of jurisdiction prescribed by law.' Therefore, although a court may have jurisdic-

tion of a case, if it, upon any point, exceeds its juris-
diction, the error may be reached by *certiorari,* there
being no remedy by appeal or writ of error in such
case. This court has many times decided that a de-
cision by the Supreme Court upon a point becomes the
law of the case upon that point, and is controlling upon
further proceedings in that case in the lower court,
and also that, with rare exceptions, such decision will
bind this court upon a second appeal upon the same
point. In the case of May v. Crawford, 150 Mo. l. c.
525, . . . we said: 'This rule is necessary to the
orderly and decent administration of the law, for it
would destroy all respect for the law, and make judg-
ments of courts of final resort mere mockeries and
travesties, if the trial court could be permitted on a
trial anew in that court to set aside, disregard or dis-
obey them.'

"Again, in the case of Gracey v. St. Louis, 221 Mo.
l. c. 5, LAMM, J., speaking upon this question in behalf
of the court, says: 'On a second appeal or writ of
error on the same facts and pleadings, the appellate
court will not notice questions determined in the pre-
vious decision. All such are *res adjudicata* and closed.
For the practical administration of justice, the former
decision is the law of the case;' citing numerous cases.
True, he says further, and properly: 'Like all general
rules, the one in hand has its exceptions. Where mani-
fest and far-reaching error has been committed, no
cast-iron or immutable rule bars a re-examination of a
question ill decided. In such case it goes without say-
ing that this court, as a debt due to justice, and as one
of the foundation stones of its own dignity, reserves
to itself the right to reconsider, re-examine and re-de-
termine.'

"It will be perceived, however, that while this
court reserves, as it must, the right to re-examine its
former decision in the same case, upon the same state
of facts, that right is not accorded to the lower court.

Curtis v. Sexton.

If this court makes a mistake either as to the law or the facts of the case, as may happen, inasmuch as the court is composed of human judges, it has the power—fortunate that it is so—to correct that mistake by reversing itself on a second appeal; but it by no means follows that the trial court or the Court of Appeals has the same right in this regard. When a point, once decided by this court, comes before either the circuit court or the Court of Appeals on further proceedings in the same case, neither of the courts last named has jurisdiction to overrule this court. Here the question is different from that presented in the case of State ex rel. v. Smith, 173 Mo. 398, where the superintending power of this court was invoked upon the Court of Appeals, because that court refused to follow a prior decision of this court in other cases. Here the question is as to the duty of that court to follow the prior decision of this court in the same case. It becomes not a question of whether that court is right or wrong in its construction of the decision of this court, but whether that court is within its lawful jurisdiction if it disregards the law of the case as previously declared by this court. Upon the question here presented, in view of the fact that there is no way of bringing the point before this court by appeal or writ of error, we have no hesitation in holding it to be our duty, under the superintending control given this court by the Constitution, to review the action of the Court of Appeals by *certiorari*."

It is true that even as early as the Constitution of 1865, and some eleven years before either of the courts of appeals was actually established, we had in that Constitution this section: "The Supreme Court shall have a general superintending control over all inferior courts of law. It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari* and other original remedial writs, and to hear and determine the same." [Sec. 3, art. 6, Con-

stitution, of Mo. 1865.] This section was carried *in totidem verbis* (except the words "of law," in the first sentence, were omitted) into the Constitution of 1875. [Sec. 3, art. 6, Constitution of Mo. 1875.] If this were all of the organic law it might well be urged that the makers of the Constitution did not have in mind the application of the provisions of this section as conferring the power of supervisory control of the Supreme Court over the several courts of appeals. But by the Amendment of 1884, which may be called the "Courts of Appeals Amendment," there appears not only this section, to-wit:

"Sec. 6. When any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision of any one of said courts of appeals, or of the Supreme Court, the said Court of Appeals must, of its own motion, pending the same term and not afterwards certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process; and the last previous rulings of the Supreme Court on any question of law or equity shall, in all cases, be controlling authority in said courts of appeals."

But also and in addition this section:

"Sec. 8. The Supreme Court shall have superintending control over the courts of appeals by mandamus, prohibition and *certiorari*." [Sec. 8, Amendment to Cons. 1884.]

For fear apparently, that the "superintending control" might be construed as not reaching and applying to the courts of appeals, the makers of this amendment, in addition to providing as they did, in section 6 of the Amendment of 1884, for the transfer of causes here from the courts of appeals, by the un-

hampered volition of a judge thereof, also, by section
8 of said amendment, re-enacted and reiterated the
language of section 3 of article 6 of the Constitution
of Missouri of 1875, and specifically conferred upon
this court the power of superintending control over
these courts by *certiorari.* In the light of all this, it
will not do to say that we may not reach an act, or a
decision of the several courts of appeals, except such
courts, by the act of a judge, or the judges thereof
voluntarily sending the case here by transfer as pro-
vided in section 6 of the Amendment of 1884, supra.
The courts of appeals are by said section 6 given the
right to send cases here of their own, or their judges'
volition; we are by said section 8 of the Amendment
of 1884, supra, given the right by virtue of our gen-
eral superintending control to cause cases to be sent
here, by our power under the Constitution, or by our
own constitutional volition. We have consistently held
that when a case is sent here by a judge, or the judges,
of one of the courts of appeals, under the provisions
of said section 6, we will assume jurisdiction, just as
if we had "obtained jurisdiction by ordinary appellate
process;" and further, that we will not, before assum-
ing jurisdiction, and as a condition precedent thereto,
nicely guage or weigh the question whether there is a
conflict of decision or not, but will leave the determina-
tion of conflict *vel non* to the Court of Appeals which
sends the case here. [Rodgers v. Ins. Co., 186 Mo.
248; State ex rel. v. Rombauer, 140 Mo. 121; Clark v.
Railroad, 179 Mo. 66.]

It may well be that our only power of enforcing
the provisions of the last clause of said section 6, and
of making, to-wit, "the last previous ruling of the
Supreme Court on any question of law or equity
. . . be controlling authority in said courts of ap-
peals" is derived from the broad power of "superin-
tending control" given by section 8 of this amendment.
A case of recalcitration, which has never arisen and

will perhaps never arise, but which is readily supposable, might come up in which any one or more of the courts of appeals would utterly refuse to follow this court or to follow one another; absent the power of superintending control somewhere lodged, there would then be four supreme courts instead of one— a thing unthinkable.

We therefore again hold that the contention of defendant that this court lacked the power to quash the judgment of the Kansas City Court of Appeals and to order that court to proceed to re-try this cause in accordance with the opinion of this court in Curtis v. Sexton, 201 Mo. 217, is not well taken, and that so far as this point is concerned, we are not sheared of jurisdiction.

III. Defendant makes further complaint of jurisdiction in us, and urges that the Act of March 30, 1911, Laws 1911, p. 190, is void for the alleged reason that the provisions of said act contravene subdivisions 17, 32 and 33 of section 53 of article 4 of the Constitution of Missouri of 1875. The act in question is as follows:

Appellate Jurisdiction: Prior Decision: Laws 1911, p. 190.

"Section 3937. The various courts of appeals of Missouri shall have jurisdiction of appeals and writs of error in all cases where the amount in dispute, exclusive of costs, shall not exceed the sum of seventy-five hundred dollars. All cases now pending in the Supreme Court, which have not been submitted, and which by the provisions of this section come within the jurisdiction of said courts of appeals, shall be certified and transferred to the proper courts of appeals, to be heard and determined by them, provided that the Supreme Court shall retain and have full exclusive appellate jurisdiction in any case pending in which the Supreme Court has made any decision or ruling."

It is clear that if we have jurisdiction, such juris-

diction attaches by virtue of the language of the proviso, to-wit: "Provided that the Supreme Court shall retain and have full exclusive jurisdiction in any case pending in which the Supreme Court has made any decision or ruling." This clause does not require the case to be *pending* in the Supreme Court, but merely that it be pending undisposed of in some court, whereby and in the course of judicial procedure, it may come again here; for if this is not the intention why the necessity for using both the words "retain", and "have?" If the lawmakers had had in mind merely the retention of jurisdiction where a case was pending here, and in which a "decision" had been made, there arises no necessity of using either the word "have" or the word "decision." If in a "pending" case a "decision" has been reached, it is no longer pending, if we may be pardoned an Hibernicism. Nor does the statute expressly require more than that the cause be still pending, and that this court shall theretofore have made some decision or ruling therein. If it be still pending in the circuit or other court from which an appeal may be prosecuted, since this court has decided a former appeal, i. e., made "any decision or ruling," it has jurisdiction in any subsequent appeal.

The constitutional objections urged are those relating to the passage of local laws, and laws touching upon "class legislation." No specifications are furnished us by counsel showing wherein a provision of this act violates the rule forbidding class legislation, nor do we know of any such reason. The law applies to all pending cases, both those which are here and those which shall hereafter be appealed to this court wherein this court shall prior to the passage of the act, have made some decision and ruling. We rule this point against defendant.

IV. Upon the merits of the case defendant urges fifteen assignments of error, and twenty-two addition-

al subdivisions thereof. (Note: Yet we are charged, and often convicted, by the bar of the State with making our opinions too long!)

The chief point in the case, and the point about which the entire controversy turns, is whether Curtis, the plaintiff, either made a tender of the deed back to Sexton & Bracking on October 6, 1890, or was relieved by his acts or the acts of Sexton & Bracking from making such a tender. The decision of this point practically decides all of the issues, and renders unavailing practically all other points urged.

There is no proof of a tender of a deed to either Sexton or Bracking, or to Sexton & Bracking on the 6th day of October, 1890. Three letters, one dated September 13, 1890, another dated September 29, 1890, and yet another dated September 30, 1890, were sent by Curtis, the plaintiff, to defendant Sexton. To neither of these letters did Sexton reply, though the triers of fact were justified in finding he received all of them. Plaintiff also wrote letters to Bracking, the receipt of which is not denied. In all these letters plaintiff stated that he intended to exercise his right to take back the money paid by him to the firm of Sexton & Bracking; and in the last letter to Sexton, that which plaintiff avers he wrote on September 30, 1890, plaintiff (says he) gave Sexton a memorandum of the amount due him and directed Sexton to make deed, send same through some bank or per express, with draft attached, in favor of plaintiff, which draft was to be delivered to plaintiff when he executed the deed back to Sexton & Bracking. If it be true that the amount set out in this letter exceeded the sum actually due plaintiff, the latter in another letter wrote defendant that the sum due plaintiff was shown by defendant's books. Sometime prior to October 6, 1890, Bracking, in an undated letter, which letter plaintiff says he received on October 6, 1890, expressed

*Partnership:*
*Dissolution:*
*Tender.*

his inability to comply with the demand of plaintiff to repay plaintiff's money and take a conveyance back for the land. All of these letters are set out in one or the other of the reports of this case, and we need not encumber the record here with them.

Plaintiff testified that he never had knowledge of the dissolution of the real estate co-partnership existing between Sexton & Bracking. From the evidence the jury, however, might well have found that he did have such knowledge. But is this a case which in the condition of the pleadings makes the question of partnership *vel non* an issuable fact? Upon the side of defendant on the trial it was so treated, without objection, but by a reference to the pleadings it will be seen that plaintiff alleges the existence of the partnership on January 5, 1888, and its continued existence *"for a number of years thereafter, including all the year of* 1890.*"* Touching this and other allegations, the answer is an *unverified general* denial only. (Other defenses are urged on other phases, but none other on this issue. Our statute, in chapter 21, article 13, entitled, "Issues, Continuances and Trial," and in section 1985 thereof provides, among other things, as follows:

"And where plaintiff or defendant sues or is sued as a corporation, and where plaintiffs or defendants sue or are sued as a partnership, and the names of the several partners are set forth in the petition or answer, it shall not be necessary to prove the fact of such incorporation or partnership, unless the opposite party put such fact in issue by affidavit filed with the pleadings in the cause."

The answer, though a general denial on this phase, as we have seen, is not sworn to. In order to put the existence of a partnership in issue it is necessary to deny the existence thereof under oath. [Nephler v. Woodward, 200 Mo. 179; Short v. Taylor, 137 Mo. 517.] The allegation of partnership and its

continuance for at least a period embracing the matters complained of in the petition, is specific. It would seem to have been sufficient if the pleader had merely set out that "S. E. Sexton, the defendant, and one F. B. Bracking, were on January 5, 1888, co-partners and were and continued so to be, during all of the times hereinafter mentioned." It could not, we apprehend, have been then urged that an issue as to partnership would have arisen upon an unverified answer. But plaintiff is here even more specific in his allegations. Under the state of the pleadings it stood admitted that defendant and Bracking were partners on and prior to October 6, 1890, and whatever Bracking said or wrote to plaintiff on and before that day bound defendant Sexton; notice to Bracking was notice to defendant Sexton, and waiver of tender by Bracking likewise bound defendant. Bracking wrote plaintiff on September 26, 1890, and said in his letter, among other things: "I could not possible [sic] raise the money by Oct. 6," and further in substance gives it as his opinion that Sexton is also "close run for cash too just now." In another letter, not dated, but received by plaintiff (he says) on October 6, 1890, Bracking, in language more expressive than elegant, avers his utter inability to comply with his contract and buy the land back. [See letters referred to in 142 Mo. App. 179.] We must judicially notice the existence of mail service and of the great telegraph and telephone systems of the country, binding together the great marts of trade as if in a single village, and hold that with this letter before him plaintiff was not bound to do a futile and useless thing, to make out and tender a deed and to demand money which he was told before hand could not, and would not, be paid to him. This case was considered on its merits here in 1907, on the first appeal, and again regard was had to the merits in 1911, in the case of State ex rel. v. Broaddus et al. supra, l. c. 212. On

this question, the court, speaking through BROWN, J.,
said:

"Going back to the merits of the case of Curtis
v. Sexton, we observe that the respondents in their
opinion have laid great stress upon the proposition
that time was of the essence of the contract to repur-
chase the property, holding that plaintiff cannot re-
cover the money which he paid to defendant unless
he tendered a deed to defendant on October 6, 1890.
This is a misconstruction of the law of the case, as
announced in our former opinion. There is not one
word in the contract requiring Curtis to tender a deed
of reconveyance on October 6, 1890. At most, it only
required him to notify defendant of his desire to resell
said property on that day; and the law, looking at the
substance rather than the form of things, holds that
if a notice was given of plaintiff's desire to resell said
property to defendants a few days before October 6,
1890, and not subsequently withdrawn, that notice was
a sufficient compliance with the contract, when fol-
lowed up, as it was, by a formal offer to reconvey
within a reasonable time, regard being had to the
situation of the parties.

"When plaintiff Curtis purchased the real estate,
there was an outstanding deed of trust on same to se-
cure a large sum of money, so that plaintiff only pur-
chased an equity in the property. The property was
advertised under this deed of trust on December 4,
1890, and subsequently sold. This deed of trust had
been placed on the property by defendant Sexton and
others; but its existence has no bearing upon Sexton's
liability on the contract sued on.

"It will be observed that on December 1, 1890,
plaintiff Curtis went to Kansas City, Missouri, and
actually tendered a deed of reconveyance to defendant
Sexton, and again demanded the repayment of the
money he had paid on the land. This was three days

before the land was advertised for sale under the deed of trust, so that so far as the facts disclosed by the record show, there was no excuse for Sexton to refuse to accept the deed and repay Curtis the money he had invested.

"If plaintiff had sold the interest in the real estate which he purchased of Sexton & Bracking, or had allowed the same to become encumbered by judgments or other similar liens, this would have afforded a valid excuse for defendant to refuse to repurchase said interest; but no such defense is pleaded or mentioned in the evidence. Plaintiff tendered a proper deed to defendants before the property was advertised for sale under the deed of trust above mentioned; so that there was no such change in the situation of the parties or the title of the property between October 6, 1890, and the date of tendering the deed, as warranted the respondent in holding that time was of the essence of the contract. [Hunt on Tender, sec. 282; Lawrence v. Miller, 86 N. Y. l. c. 137.]"

If no privity existed between defendant and Bracking, and if plaintiff was required to tender his deed on October 6, 1890, all of which is contended, then clearly this case breaks down upon a thing under the facts here impossible of performance. Bracking was somewhere in Ohio, inferentially near Columbus, and Sexton was in Kansas City, on the day in question. We judicially notice the exact geographical location of Kansas City in our State. We notice also the location of the State of Ohio, as a State of the Union, and we know the impossibility of making tender of a deed at or near Columbus, Ohio, and making on the same day tender of the same deed, at Kansas City, Missouri. The contract here was a contract obligating both defendant and Bracking to buy back the land at the election of plaintiff; upon electing plaintiff was to deed it back to both of them, and not to any one of them. Whether the partnership was dissolved or

Curtis v. Sexton.

not as to all of the rest of the world, could it be so dissolved as to plaintiff who held a joint subsisting partnership agreement with both defendant and · Bracking, as to prevent defendant from being bound by dealings and notice and tender, done, had, or made to Bracking? Greenleaf lays down the rule in such cases thus:

"But in the absence of fraud, if the parties have a joint interest in the matter in suit, whether as plaintiffs or defendants, an admission made by one is, in general, evidence against all. They stand to each other, in this respect, in a relation similar to that of existing copartners. Thus, also, the act of making a partial payment within six years, by one of several joint makers of a promissory note, takes it out of the Statute of Limitations." [1 Greenleaf on Evid. (16 Ed.), sec. 174.]

If notice is required to be given to persons engaged in a joint act, it would seem that service of notice upon one of such persons is sufficient. [29 Cyc. 1119, and cases cited.]

It follows that the objections of defendant to the evidence offered by plaintiff; to the instructions given for plaintiff, and to the act of the court in refusing certain instructions offered by defendant, are disallowed, since they all turn upon the matters above discussed. Other alleged errors have been carefully considered, but we find in them no such error as under the law justifies us in reversing the case. [Sec. 2082, R. S. 1909.]

We have been so impressed with the urgent zeal of counsel in his strenuous insistence that this court, in its action taken at divers times in this case, has in effect become *particeps criminis* in depriving his client of money not justly due, that a word on that phase may not be inappropriate. Plaintiff has lost his money, unless he recovers from defendant; if he recover from defendant, the latter loses. We are

dealing with hardships, and some one is bound to lose. Plaintiff and defendant are adults and not infants, and were adults and not infants when the contract—the bone of contention—was made. For such, the law merely enforces contracts; it does not make them. In order to get plaintiff's money, defendant agreed to pay back to him all money plaintiff put in the land, if plaintiff desired this to be done, on October 6, 1890. Plaintiff electing to be repaid, defendant refused to pay, and this action resulted. Inherent justice considered, should plaintiff lose in a sense, both his money and his contract, or should defendant lose his money only? In law there can be but one answer to this, and in a way the maxim: *In restitutionibus benignissima interpretatio facienda est,* applies; but learned counsel would seem to urge upon us the maxim: *Est aliqiud quod non oportet, etiam si licet.*

Much has been written in this case, both by counsel and the courts in the dozen years or more in which it has been pending, but a time should come when all cases end. Let the judgment be affirmed.

*Brown J.,* concurs; *Lamm, C. J.,* and *Graves* and *Walker, JJ.,* concur in all except the first paragraph in separate opinion by GRAVES, J.; *Bond, J.,* dissents on the ground that this court has no jurisdiction; *Woodson, J.,* takes no part.

SEPARATE CONCURRING OPINION.

GRAVES, J.—I concur fully in the result reached by the opinion in this case, and also concur in all of the opinion except the first paragraph thereof. In the first paragraph there is given a construction to the Act of 1911, therein set out, contrary to the views heretofore expressed on that question. [Craig v. St. Louis & S. F. Railway Co. 248 Mo. 270; Ottumwa Bridge Co. v. Corrigan et al., 251 Mo. 667.] Under the ruling in the Craig and Corrigan cases supra, if the appellant cannot sustain his bill of exceptions

by the *nunc pro tunc* entry, then there is no bill of exceptions in the case. All of Division One concurred in the Corrigan and Craig cases, supra.

*Lamm, C. J.,* and *Walker, J.,* concur in these views.